**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| PARKER POE, | ) | |
| | ) | Case No. 3:24-CV-00368 |
| Plaintiff, | ) | |
| | ) | Judge Crenshaw |
| v. | ) | Magistrate Judge Frensley |
| | ) | |
| DR. MELANIE LOWE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.      INTRODUCTION

Plaintiff Parker Poe filed this lawsuit seeking recovery for unlawful treatment he received at Vanderbilt resulting from his efforts to bring awareness to sexual assault on campus through social media, an important initiative for Vanderbilt, and colleges across the country. In exchange for his efforts, Vanderbilt and the individual Defendants Dr. Melanie Lowe, Dr. Jeremy Bourgoin, Lisa Clapper, Dr. Jamie Bojarski, and Dr. Cynthia Paschal (collectively "Defendants") violated Plaintiff's rights under its policies and the law to discipline Plaintiff while not disciplining similarly situated female students who engaged in the same activism to avoid liability and negative publicity. In delivering discipline to Plaintiff, Vanderbilt purposefully ignored legitimate concerns about Plaintiff's safety and risked his life. As explained below, Plaintiff has plausibly alleged causes of action against Defendants for breach of contract, violation of Title IX, retaliation and interference with accommodations in violation of Section 504 of the Rehabilitation Act, defamation, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and tortious interference with contract. Plaintiff's First Amended Complaint

("Complaint") should not be dismissed. If the Court finds that Plaintiff has not plausibly alleged any of the causes of action, Plaintiff requests leave to amend, pursuant to FRCP 15.

## II.     FACTUAL BACKGROUND

### a.   *Plaintiff's Relationship with Vanderbilt*

Plaintiff enrolled as a student at Vanderbilt in 2020. (Complaint, ¶ 20) He took a leave of absence from Vanderbilt in Spring 2022 to prepare for a highly competitive and specialized internship opportunity. (*Id.*) Plaintiff successfully obtained multiple internship offers and chose to work for a company beginning in January 2023, so he was also on leave from Vanderbilt and not present on campus for the second semester of 2023. (*Id.*, ¶ 20-23) While he was not enrolled, Plaintiff was subjected to the disciplinary process that forms the basis for this lawsuit. (*Id.*)

### b.   *The Disciplinary Investigation*

Plaintiff was subjected to disciplinary proceedings under the Student Handbook while on leave of absence from Vanderbilt during the second semester of 2023. Plaintiff was subjected to the disciplinary process for anonymously reposting on Yik Yak posts he had seen about Simon Roe engaging in sexual misconduct in April 2022 (also when Plaintiff was not on campus and on a leave of absence). There were *a lot* of posts about Simon Roe engaging in sexual misconduct on Yik Yak and another site called Greek Rank. Plaintiff only reposted a small number of these posts and only on Yik Yak. Plaintiff reposted the messages because he felt he had a duty to bring awareness to the issue because he and his parents are each sexual assault survivors, because he believed the posts to be true based on what he had heard, and in response to Vanderbilt's encouragement of students to advocate for victims of sexual misconduct on college campuses, including on social media. Plaintiff's post happened during a few days, while the overall posts about Simon Roe had started months earlier and continued for numerous week. (*Id.*, ¶¶ 26-40)

2

Simon Roe and his father were upset about these posts. The father contacted Defendant Neil Jamerson, Vanderbilt's Assistant Dean of Students, Community Standards and Support, in 2022 when the posts were circulating, but Defendant Jamerson and Vanderbilt took no action to have the posts removed as it had done in other similar cases; he contacted Defendant Jamerson again, a few months later and once again, no action was taken. (*Id.*, ¶ 41-43). Later that year, Simon Roe filed a lawsuit and was able to identify some of the posters through subpoenas. (*Id.,* ¶ 44). Once Simon Roe had counsel and names of these individuals, his father provided the identities to Defendant Jamerson in a report on his son's behalf on January 3, 2023, and demanded that all posters be severely punished. The list of posters included females. (*Id.*, ¶¶ 45-47).

Defendant Jamerson invited Simon Roe and his father to provide impact statements at this time to help with the end decision in having these students severely punished, even though the handbook does not provide for victim statements, and continued to communicate with Simon Roe's father throughout the disciplinary process. (*Id.*, ¶¶ 51, 71-76) Defendant Jeremy Bourgoin, Director of Student Accountability, Community Standards and Academic Integrity, knew that Defendant Jamerson's solicitation of impact statements, promise to Simon Roe's father to consider those statements in deciding the outcome, and communicating with Simon Roe's father about the disciplinary process violated the Student Handbook, but did not remedy the situation. (*Id.*, ¶¶ 77-79) Notably, Parker Poe's mother was told when she inquired about the disciplinary process that the university does not engage with parents on student conduct matters, even if the parent made the report. (*Id.*, ¶ 85)

Defendant Bourgoin cut and pasted the report from Simon Roe's father into an official complaint form against Plaintiff. However, to mitigate risk of claims from Simon Roe and from female posters who may be victims of Simon Roe, Defendants Jamerson and Bourgoin only filed

3

and pursued official charges against Parker Poe. Simon Roe's father was not informed that the other students were not charged and instead Vanderbilt used Plaintiff as a scapegoat for all the posts, the vast majority of which were not made by Plaintiff. Plaintiff was never informed he was being investigated for "instigating" all the posts (*Id.*, ¶¶ 50-58, 80-83) Vanderbilt admitted it authority to file charges against the female posters and admitted it should have. (*Id.*, ¶ 61)

Plaintiff could not defend himself adequately during the investigation because he was not notified he was being charged with and investigated for making all the posts. (*Id.*, ¶ 62) Plaintiff was not provided notice of the charges against him or the details of the allegations. (*Id.*, ¶¶ 63-72) When Plaintiff asked if he was being charged with the Greek Rank postings, Defendant Bourgoin refused to respond to Plaintiff, leaving Plaintiff unaware that he was being charged with making these postings. (*Id.*, ¶¶, 102-103, 144) Vanderbilt also changed the definitions of the charged misconduct from what is provided in the Student Handbook in order to bring charges and find Plaintiff responsible. (*Id.*, ¶¶ 90-100). Plaintiff was then found responsible for additional misconduct charges during the appeal process for which he was never provided notice. (*Id.* ¶ 104)

Plaintiff was not provided with an impartial, fair and thorough investigation. Amongst the inequities was the failure to interview the other posters and identified witnesses. (*Id.*, ¶¶ 106-117) Defendants also failed to conduct any investigation into whether the posts were true or whether Simon Roe and his family's impact statements were credible. (*Id.*, ¶¶ 118-130; 137-141, 145, 153) It cannot be harassing or disruptive conduct to post the truth. Even though Defendants accepted and considered the impact statements not provided for in the Handbook, they refused to consider a polygraph examination from Plaintiff. (*Id.*, ¶ 128-129) Defendants also failed to consider evidence that Plaintiff did not make the Greek Rank postings and was otherwise credible. (*Id.*, ¶¶ 130-31, 142-43) Importantly, Plaintiff was also denied his right under the Handbook to review all

evidence against him. (*Id.*, ¶ 146-152) Plaintiff was also issued sanctions disproportionate to the offense and Handbook guidelines. (*Id.*, ¶¶ 157-180)

Defendant Bourgoin violated Vanderbilt's policy, Plaintiff's privacy, and federal law and defamed Plaintiff when he falsely communicated to Simon Roe and his father that Plaintiff was the "instigator" of the posts and informed them that Plaintiff was not an enrolled student. Defendant Bourgoin knew that Plaintiff did not instigate the posts and could not have instigated the posts due to the timing. (*Id.*, ¶¶ 180-84, 195-196, 198-201) Plaintiff was denied the right to appeal the finding that he was found to be the "instigator" for all posts because he was not informed of this until after the appeal process was complete. (*Id.*, ¶¶ 185-190) Defendant Bourgoin shared information about the outcome of the matter with Simon Roe just a couple days after the finding was shared with Plaintiff despite specifically acknowledging that doing so was improper, and despite not first informing Plaintiff's parents per the Handbook, and was dishonest with Plaintiff about what information was shared with Simon Roe. (*Id.*, ¶¶ 187-193)

### c. *Delivery of the Outcome to Plaintiff*

Defendants Bourgoin, Jamerson, and Clapper deliberately delivered the outcome notification to Plaintiff in a manner that risked his life in order to benefit Simon Roe. Plaintiff became suicidal during the disciplinary matter when he realized he was being singled out in an unfair and biased process. Plaintiff's mother contacted Defendants, and specifically relayed to Defendant Lisa Clapper, Director of the Student Care Network and Student Care Coordination, and Defendant Bourgoin that Plaintiff was having suicidal thoughts and asked for the outcome notification to be delayed by two weeks so that it was delivered to Plaintiff when he was home from his internship so that Plaintiff's parents could ensure his safety. Defendants Clapper and Bourgoin represented to Plaintiff's mother that the outcome would not only be held off, but be

delivered in a manner to ensure Plaintiff's safety. This did not happen. The outcome was delivered to Plaintiff when he was away from home at his internship during working hours (despite his request that it be delayed 15 minutes until after work hours) without Plaintiff's parents being present. (*Id.*, ¶¶ 203-221) Sickeningly, Defendant Clapper joked about Plaintiff's suicidal ideation and the request that the delivery be delayed until he could be with his parents by writing, "The parents better have flown out there. Lol." (*Id.*, ¶ 219) The result was that Plaintiff did attempt suicide. (*Id.*, ¶ 222-224)

There was no need to rush issuance of this outcome determination at the risk of Plaintiff's life. Neither he nor Simon Roe were present on campus, no postings had happened for nearly a year, and Vanderbilt had not even spoken to the other posters. (*Id.*, ¶¶ 223) The only explanation was that Defendants needed to provide an explanation to Simon Roe and his father. (*Id.* ¶ 210) Even after this suicide attempt, Defendants assigned Plaintiff mandatory assignments as part of his sanction that both suggested one should not be afraid to die from suicide and mocking an unsuccessful suicide attempt. (*Id.* ¶ 226-228)

### d. *The Appeal Decision*

The appeal decision was issued by Defendant Melanie Lowe and contained information about Plaintiff that was not in the record or decision provided to Plaintiff, which violated the requirement to provide Plaintiff with all information and to only consider evidence in the file for appeal. (*Id.*, ¶ 234-241) Vanderbilt also did not follow the requirement to have the appeal heard by a designated and trained representative. (*Id.*, ¶ 252-254) In deciding the appeal, Defendant Lowe found Plaintiff responsible for the new charge of "disrupting the civility of the University community" even though there is no support for this in the record and Plaintiff had no opportunity to respond to this allegation. (*Id.*, ¶¶ 258-263) Defendant Lowe failed to conduct a fair and

unbiased review of the file and instead "rubber-stamped" the decision without considering the arguments. (*Id.* ¶¶ 242-282) The record also later showed that Defendant Jamerson had a hand in both the investigation and the appeal process, which is also against the rules requiring an unbiased appeal. (*Id.* ¶¶ 283-289)

### e. *Additional Privacy and Handbook Breaches*

In addition to sharing information with Simon Roe and his father, Defendants and other employees also shared information about the outcome to individuals at Vanderbilt who should not have been informed and shared Plaintiff's disability accommodations in violation of its policies and the law. (*Id.*, ¶¶ 297-307) Due to the breaches of privacy relating to Plaintiff's suspension and disability accommodations, multiple faculty members have emailed negative information and formed a negative opinion of Plaintiff. (*Id.*, ¶ 332)

As a result of the sharing of the letter and information with Simon Roe, he used the letter to harm Plaintiff. Plaintiff filed a complaint with Vanderbilt resulting from this policy violation. Plaintiff asked that Defendants Bourgoin and Jamerson recuse themselves as having a conflict of interest due to their interactions with Simon Roe and his father relating to Plaintiff, but upon information and believe this did not occur. Vanderbilt handled Plaintiff's complaint differently than it handled Simon Roe's father's complaint on behalf of his son. (*Id.*, ¶¶ 334-343)

### f. *Disability Accommodation Interference and Retaliation*

Plaintiff applied for disability accommodations in fall 2023, which were granted after a lengthy process. (*Id.*, ¶ 308) Shortly after getting the accommodations, Defendant Bojarski emailed Plaintiff falsely accusing him of using the accommodations to try to escape sanctions. In addition, she created additional steps for him to use the accommodations that do not apply to other disabled students. These actions interfered and will continue to interfere with Plaintiff's ability to use the

accommodations. (*Id.* ¶¶ 309-316) Defendant Bojarski also shared Plaintiff's disability information with the department that had laughed about him being alone and suicidal when receiving the outcome determination. (*Id.* ¶ 320)

Due to these actions, Plaintiff requested a leave of absence from Vanderbilt in 2024 and complained about the interference with his disability accommodations, retaliation, and privacy breaches, and shared his belief that he could not return to campus safely. He finally got a response from Defendant Cynthia Paschal, Senior Associate Dean for Undergraduate Students, School of Engineering, who, instead of addressing his concerns as required under the Handbook and the law, told him to withdraw. (*Id.*, ¶¶ 321-325)

### g. *Interference with Business and Contractual Relations*

As a result of Defendants' actions, Plaintiff had a job offer rescinded and was told he was ineligible for future employment. (*Id.*, ¶ 345) For other similar positions, Plaintiff had to turn down offers, withdraw from the application process, or forego applying. And for those companies where he had already applied, he now must disclose the delayed graduation and discipline in the future. (*Id.*, ¶¶ 345-47, 354) Plaintiff was also prevented from participating in activities at Vanderbilt relating to his field which impacts his career prospects. (*Id.*, ¶¶ 348-353)

### III.   LAW AND ANALYSIS

### a.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true the facts Plaintiff alleged in his Complaint and construe the Complaint most favorable to him. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive the motion to dismiss, the Complaint must (1) contain enough facts to plausibly state a claim; (2) not merely recite the elements of the cause of action; and (3) allege a right to relief that goes beyond a speculative level.

8

*See Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct 1955, 167 L.ed.2d 929 (2007)). As set forth in the following sections, Plaintiff has plausibly pled his claims.

### *b.* Plaintiff Seeks Injunctive Relief But Does Not Oppose Dismissal of the Remedy as a Separately Pled Cause of Action.

Without waiving his right to seek injunctive relief, Plaintiff does not dispute that injunctive relief is a remedy and not a separate cause of action.

### *c.* Plaintiff Alleged Sufficient Facts to Establish a Breach of Contract Claim.

A Tennessee breach of contract claim has three elements: "'(1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; (3) damages caused by the breach of the contract.'" *Sifuna v. S. Coll. Of Tenn., Inc.*, No. 17-5660, 2018 WL 3005814, at *2 (6th Cir. Apr. 5, 2018) (citation omitted). It is well settled that the student-university relationship is contractual in nature such that a student may raise breach of contract claims arising from the university's failure to comply with its rules governing disciplinary proceedings under Tennessee law. *Id.*; *see also Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011). Plaintiff has plausibly alleged each of these elements.

Defendant Vanderbilt does not dispute that Plaintiff has the right to bring a breach of contract claim Rather, Vanderbilt argues that Plaintiff's breach of contract claim should be dismissed because he did not plead specific provisions of the Student Handbook that were breached and resulting damages. Vanderbilt cited no authority that under Rules 8 or 12(b)(6), Plaintiff has to provide the level of detail it suggests requires dismissal. While the two cases Vanderbilt cited show instances where the courts dismissed threadbare breach of contract allegations, that is not the case here as Plaintiff pled specific promises in the Student Handbook that were breached in Count II in eleven bullet points, as well as privacy breaches. (*See* Complaint,

¶¶ 374-76) Further, Plaintiff provided factual allegations about each of those specific breaches in the factual section of the Complaint, which were incorporated into Count II. (*Id.* 41-358, 366). Plaintiff also attached the applicable version of the Student Handbook as Exhibit A to the Complaint. Specific examples of how the contractual breaches were pled follow:[1]

| **Specific breaches alleged in Paragraphs 374-75 of the Breach of Contract Section** | **Supporting Allegations in the Complaint** |
| --- | --- |
| Failure to conduct a fair and unbiased process and making a finding not supported by a preponderance of the evidence as guaranteed in the Accountability Procedures contained in the Handbook (Complaint, Exhibit A, pp. 110-112), the Nondiscrimination Policy contained in the Handbook (p. 220), and Section I of the Standards of Conduct | In addition to items detailed below:<br><br>Plaintiff was subjected to a predetermined outcome and treated less favorably than Simon Roe and other posters. (Complaint, ¶¶ 52-54, 67-70, 77-81, 88, 107-118, 139, 164, 173-174)<br><br>Vanderbilt handled complaints filed by Plaintiff differently. (*Id* ¶¶ 84-85, 131-134, 334-343)<br><br>Defendants failed to request and consider all relevant evidence, including information from Simon Roe about the posters. (*Id.*, ¶¶ 114-115, 141)<br><br>Defendants did not interview Simon Roe. (*Id.*, ¶¶ 52-54, 119-120, 121, 151-53, 161, 165,166, 167 168)<br><br>Plaintiff was required to prove information that was verifiable and instead of Vanderbilt meeting its obligation to gather and consider all evidence, found Plaintiff responsible even though the facts do not support that he was responsible by a preponderance of the evidence. (*Id.*, ¶¶ 52-54, 62, 100, 118-132, 140-46, 164-165, 181-186, 193)<br><br>Procedures were not followed as outlined in the Handbook, including inviting and considering impact statements (*Id.*, ¶¶ 51, 73, 77-78,79-80, 129, 173-74) and allowing anonymous sexual assault reporting. (*Id.*, ¶¶ 36-44, 262)<br><br>Defendant Bourgoin did not provide Plaintiff with accurate information concerning whether sexual assault |

---

[1] By providing this list, Plaintiff is not limiting its breach of contract arguments, but providing support that he plausibly alleged the claim.

10

| | allegations were made against Simon Roe, aided Simon Roe in his litigation efforts against Plaintiff, and was dishonest with Plaintiff about whether he was being investigated for the Greek Rank postings. (*Id*., ¶¶ 79-82, 124, 138, 180-202)<br><br>Vanderbilt ignored conflicts of interest. (*Id*., ¶¶ 334-340) |
|---|---|
| Allowing Simon Roe and his father to influence the disciplinary proceeding, which violated the promise of a fair and unbiased proceeding (Handbook, pp. 110-112, 219) | Despite acknowledgement about the impropriety of Simon Roe and his father's involvement, Vanderbilt continued to allow it to happen and succumbed to pressure to mitigate liability to the university at Plaintiff's expense. (*Id*. ¶¶ 41-55, 63-68, 71-87, 180-218, 230, |
| Failure to provide notices of the charges and an opportunity to review evidence, as provided at pages 110-11 of the Handbook | Plaintiff was not provided notice that he was being charged with instigating or making all postings (*Id*., ¶¶ 62, 100, 145-146, 181-86, 193)<br><br>Plaintiff was not provided the charge until after the process was completed and learned he was accused of a posting he had never seen alleging Simon Roe drugged and sexually assaulted women, used racial slurs, and manipulated the diversity program. (*Id*., ¶ 105)<br><br>The appellate officer found Plaintiff responsible for an additional misconduct charge for which he had not received notice (*Id*., ¶¶ 258-63) |
| Changing or not applying the definitions contained within the Handbook, pages 97, 160 | Plaintiff was not provided a definition of disorderly conduct, impersonation, and was provided definitions of harassment that were not applied. (*Id*., ¶¶ 90-100)<br><br>Plaintiff was disciplined for bringing attention to sexual assault, which is actually encouraged by Vanderbilt and not harassment, as evidenced by the fact that female posters were not held accountable for their posts (*Id*., ¶¶ 6, 35-44, 82, 247-252, 398) |
| Denying Plaintiff access to evidence used against him and an opportunity to respond in violation, page 227 of the Handbook | Plaintiff was not provided the charge until after the process was completed and learned he was accused of a posting he had never seen alleging Simon Roe drugged and sexually assaulted women, used racial slurs, and manipulated the diversity program. (*Id*., ¶ 105) |
| Denying Plaintiff the opportunity to call witnesses as provided at pages 110-112 of the Handbook | Simon Roe was permitted to provide an impact statement, but he was not interviewed or called as a |

| | witness, so Plaintiff could not challenge the evidence. (*Id.*, ¶¶ 88, 105, 121-132, 145, 161, 165-168) |
|---|---|
| | The other posters were not interviewed and Plaintiff was prohibited from calling the other posters as witnesses. (*Id.*, ¶¶ 30-31, 88, 107-117, 153, 177, 193, 245, 251, 268) |
| | Defendant Bourgoin purposefully failed to interview a witness who would substantiate the truth of the postings. (*Id.*, ¶ 150) |
| | Defendant Bourgoin failed to interview fraternity brothers of Simon Roe with relevant information. (*Id.*, ¶¶ 34, 114-115, 166-67, |
| Denying Plaintiff the ability to challenge adverse testimony and imposition of sanctions disproportionate to the alleged misconduct as provided at pages 93-94, 110 of the Handbook | Simon Roe was permitted to provide an impact statement, but he was not interviewed or called as a witness, so Plaintiff could not challenge the evidence. (*Id.*, ¶¶ 88, 105, 121-132, 145, 161, 165-168) |
| | Plaintiff was not provided all posts for which he was held responsible (*Id.,* 105, 149, 151, 152) |
| | Plaintiff was issued a harsh sanction contrary to the Handbook guidelines that mocked his mental health concerns. (179, 226-228) |
| | The Handbook requires lesser sanctions when appropriate, as here where Plaintiff posted for a few short days, posts came down quickly, and voluntarily disengaged in any posting 9 months prior to the allegations. (*Id.*, ¶¶ 27-40, 143) |
| Treating Plaintiff differently than other similarly situated students as provided at page 47 of the Handbook and Sections D and N of the Standard of Conduct | Plaintiff was treated differently than other similarly situated students based on gender and disability and retaliated against. (*Id.*, ¶¶ 52-61, 308-333, 375, 398-416) |
| Inviting and considering information not provided for under Vanderbilt's policies and procedures | Defendant considered the impact statements, but refused to consider the polygraph examination (*Id.*, ¶ 128-129) |
| Irregularities in the appeal process, Handbook, pp. 113-118 | Defendant Jamerson improperly influenced the appeal. (*Id.*, ¶¶ 284-89) |
| and | Defendant Lowe failed to consider the record and did not consider evidence in the light most favorable to |

12

| | |
|---|---|
| Failing to provide an equitable appeal and informal resolution process as provided at page 110 of the Handbook; 93-94 of the Handbook that provides for graduated sanctions, as should have been applied to Plaintiff under this definition and the facts in this case | Plaintiff. (*Id.*, ¶¶ 26-40, 121, 181-186, 235, 244, 245-51, 264-269, 270, 273,274-275,<br><br>Defendant Lowe did not consider the disproportionate sanction or graduated sanctions available. (*Id.*, ¶¶ 24, 82, 244-245, 246, 274-281, 398)<br><br>Defendant Lowe found Plaintiff disrupted the civility of the University community and campus culture even though this was not a charge for which he was provided notice and despite the fact that no other individual involved in the posting was held responsible. (*Id.*, 35-40, 43, 82, 247-51, 258-263, 398)<br><br>Defendant Lowe was not the appellate chair or trained to hear the appeal. (*Id.*, ¶¶ 253-254) |
| Breaching the privacy and confidentiality promises contained in Section K, pages 48-49 of the Handbook | Vanderbilt breached its policies, Tennessee law and FERPA by notifying Simon Roe and his father of the outcome of the matter., (*Id.*, ¶¶ 180-186)<br><br>Plaintiff's disciplinary and disability information was improperly shared internally/externally at/by Vanderbilt. (*Id.*, ¶¶ 297-305) |

These allegations are sufficient to meet the Rule 12(b)(6) standard for asserting a breach of contract claim, and require denial of Vanderbilt's motion to dismiss this claim. *See, e.g., Atria v. Vanderbilt Univ.*, 142 Fed.Appx. 246 (6th Cir. 2005) (denying summary judgment for failing to consider a polygraph but considering other hearsay evidence); *Doe v, Univ of N.C. Sys.*, No. 1:23-cv-00041, 2024 WL 925549, *12 (W.D.N.C. Mar. 4, 2024) (finding allegations of an unfair disciplinary process and failure to follow procedures sufficient to allege a breach of contract claim). Plaintiff also adequately pled that he suffered damages as a result of the contractual breaches, including lost educational and employment opportunities, emotional distress, and reputational harm. (Complaint, ¶¶ 344-358, 378-381). Thus, his claim should not be dismissed.

### d. Plaintiff Properly Pled a Title IX Selective Enforcement Claim

In Count III of his Complaint, Plaintiff alleged a selective enforcement claim under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*. To plead a claim for

selective enforcement, Plaintiff "'must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender.'" *Doe v. Oberlin College*, 60 F.5th 345, 356 (6th Cir. 2023) (citations omitted). Plaintiff must plead sufficient facts to demonstrate that gender motivated the selective enforcement and that the relevant aspects are "nearly identical to those of the female student." *Id*. (relying on *Mallory v. Ohio Univ.*, 76 F.App'x 634, 641 (6th Cir. 2003)). Plaintiff has met this pleading standard.

Plaintiff alleged that Vanderbilt selectively enforced Title IX against him by filing formal charges against him while not filing formal charges against the female students who engaged in substantially similar conduct. This resulted in severe discipline being issued to him, but not the female students. (Complaint, ¶ 389) The report Simon Roe's father submitted that led to formal charges being filed against Plaintiff included allegations against the female posters, as well as Plaintiff, but Vanderbilt cut and pasted the portion about Plaintiff from that report form and turned it into a formal complaint against Plaintiff. (*Id.* at ¶ 390) The initial complaint form from Simon Roe included Plaintiff and two females, L.N. and M.G., who posted about Simon Roe being a sexual assaulter and instigated and actually contacting his employer. (*Id.*. ¶¶ 391-395) However, despite Simon Roe's request that all be investigated, Vanderbilt stated that it would not bring charges against the female posters. (*Id.*. ¶ 82, 398) This is evidence of gender bias because Vanderbilt said they would not bring charges against or punish women for making public allegations of sexual assault because that would be anti the *#metoo* movement. (*Id.*, ¶¶ 404-406)

Plaintiff further alleged that the selective enforcement was motivated by gender because the punishment involved, in part, educational lessons relating to male figures and their relation to women and because of pressure from the federal government and campus activists (*Id.* at 399-416) Courts have consistently held that allegations of pressure from outside forces to treat males

differently than females are sufficient to plausibly allege a Title IX violation. *See e.g., Neal v. Col. St. Univ.*, No. 16-cv-873-(RM)(CBS), 2017 WL 633045 (D. Col. Feb. 16, 2017)(rejecting motion to dismiss Title IX claim because male plaintiff alleged his erroneous outcome occurred in part because defendant university "bow[ed] to DOE/OCR pressure to discipline males); *Doe v. Washington & Lee Univ.*, No. 6:14-cv-00052, 2015 WL 4647996, *10 (W.D. Va., Aug. 5, 2015)(refusing to dismiss a Title IX claim in part because male plaintiff alleged defendant university was "under pressure from the government to convict male students of sexual assault, [therefore] a reasonable fact finder could plausibly determine that Plaintiff was wrongly found responsible for sexual misconduct and that this erroneous finding was motivated by gender bias."); *Collick v. William Paterson Univ.*, No. 16–471(KM)(JBC), 2016 WL 6824374, *12 (D.N.J. Nov. 17, 2016), *appeal pending* (refusing to dismiss a Title IX claim in part because male plaintiff alleged DOE pressure may have caused defendant university to "believe it was in the spotlight" and therefore erroneously disciplined plaintiff to show it would sanction males accused of sexual misconduct); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 768 (D. Md. 2015)(rejecting motion to dismiss Title IX claim in part because male plaintiffs alleged defendant university possessed communications evidencing its erroneous discipline of plaintiffs was causally linked to university's desire to demonstrate to OCR that the university would aggressively discipline male students); *Doe v. Lynn Univ., Inc.*, No. 9:16–cv–80850, 2017 WL 237631, *4 (S.D. Fla. Jan. 19, 2017) (refusing to dismiss a Title IX claim where male plaintiff alleged his erroneous discipline occurred in part because of pressure related to: (a) DOE directives interpreted by defendant university as mandating discipline of male students accused of sexually assaulting female students; (b) criticism of defendant university's handling of female students' sexual assault complaints against males; and (c) university's awareness of said criticism); *Doe v. Regents of Univ. of*

*California*, 2:15-cv-02478-SVW-JEM (June 8, 2017, C. Dist. CA)(unreported and contained in Doc.38-5)(rejecting motion to dismiss Title IX claim because male plaintiff alleged defendant university faced "growing local and national pressure" to discipline male students generated in part by female students' OCR complaints alleging the university "failed to adequately handle their complaints of sexual assault.")

Additionally, the Sixth Circuit has held that evidence of "clear procedural irregularities" can support a plausible inference of sex discrimination. *Oberlin*, 963 F.3d at 586-88. Other courts considering the issue have also held that procedural irregularities can be sufficient to plead a Title IX claim. *See, e.g., Doe v. University of S. Ind.*, 43 F.4th 784, 793 (7th Cir. 2022); *Doe v. Marshall Univ. Bd. of Governors*, 683 F.Supp.3d 522, 535 (S.D. W. Va. 2023). The many procedural irregularities are detailed in the breach of contract section above. The most telling procedural irregularity is that Vanderbilt would not initiate complaints against all the students named in Simon Roe's initial report, even though requested by the complainant, except for Plaintiff, a male student and Vanderbilt's Title IX office communication to Plaintiff that they could not take action against female students making sexual assault allegations, because it was anti-MeToo (Complaint, ¶ 404)

Vanderbilt attempted to hide behind the fact that it did not pursue formal charges against the females and twist this fact to argue that it means that Plaintiff and these two female students are not similarly situated. Plaintiff's allegation is that all three students were similarly situated when Simon Roe's complaint was filed naming all three, and providing alleged impact each of the females caused him, and Vanderbilt, who has a duty to investigate and remedy sexual harassment, chose to proceed only against the male student. These facts are sufficient to plead a Title IX selective enforcement claim. *See Oberlin*, 60 F.4th at 356; *Doe v. Rollins College*, 352 F.Supp.3d 1205, 1211-12 (M.D. Fla. 2019) (selective enforcement claim pled when the university instituted

16

charges against a male student only for sexual assault when both the male and female student involved in the encounter were intoxicated); *Doe v. Amherst Coll.*, 238 F. Supp.3d 195, 223 (D. Mass 2017) (same); *Waters v. Drake, et al.*, 105 F. Supp. 3d 780, 804 (S.D. Ohio 2015) (rejecting motion to dismiss Title IX claims where complaint alleged the university treated "similarly-situated female employees [] more leniently" when they "condon[ed]" sexual misconduct); *Yap v. Northwestern University*, 119 F.Supp.3d 841, 845 (N.D. Ill 2015) (refusing to dismiss Title IX claim because Northwestern "did not promptly respond to [plaintiff's] sexual harassment claim . . . while Northwestern promptly investigates similar complaints by female students); *Salisbury Univ.*, 123 F. Supp. 3d at 768 (rejecting motion to dismiss Title IX claim based on allegations that the university had communications evidencing that it favored female complainants against male respondents).

For these reasons, Plaintiff has plausibly alleged his Title IX selective enforcement claim.

### e. Plaintiff's Section 504 of the Rehabilitation Act Claim Is Properly Pled

#### i. Individual Defendants

Plaintiff does not oppose dismissal of the ADA and Rehabilitation Act claims against Defendants Bojarski and Paschal in their individual and official capacities because their employer, Defendant Vanderbilt, is a party.

#### ii. Plaintiff's Disability Interference and Retaliation Claim Is Based on the Rehabilitation Act

Plaintiff pled his disability interference and retaliation claim under the Rehabilitation Act and the ADA. Defendants are correct that Title II of the ADA applies to public institutions and, thus, Plaintiff's claim should proceed under the Rehabilitation Act.

#### iii. Plaintiff Pled a Prima Facie Case of Disability Interference Retaliation

17

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) prohibits interference with the exercise of rights granted by the law to individuals with disabilities. The Act also prohibits retaliation against any individual because of his or her opposing practices made unlawful by the Act or otherwise seeking to enforce rights under the Act. *See, A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696-97 (6th Cir. 2013); *L.G. v. Bd. of Educ. of Fayette Cnty.*, 775 F. App'x 227, 232 (6th Cir. 2019). In Count Three, Plaintiff plausibly alleged that Defendants interfered with his ability to use his disability accommodations and retaliated against him for opposing unlawful practices under and attempting to enforce his rights under the Act.

Defendants argued that Plaintiff's claim should be dismissed because he failed to plead a prima facie case. Defendants are misguided, however, because Plaintiff is not required to plead a prima facie case under the *McDonnell Douglas* burden shifting analysis to state a claim because it is an evidentiary standard, not a pleading requirement. *Thomas v. Tennessee Dep't of Human Servs.*, No. 3:21-cv-00426, 2022 WL 2286780, at **8-10 (M.D. Tenn. June 23, 2022) (holding that "when ruling on a Rule 12(b)(6) motion to dismiss, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) . . . is inapplicable"), *citing Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) (same); *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."); *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-tmp, 2014 WL 1330309, at *6 (W.D. Tenn. Mar. 28, 2014) ("In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead all of the elements of the prima facie case in order to survive a motion to dismiss."); *Thompson v. Hendrickson USA, LLC*, No. 3:20-CV-00482, 2021 WL 848694, at *5 (M.D. Tenn. Mar. 5, 2021) ("*McDonnell Douglas* ultimately may not apply at all in

18

a particular case; in particular it would not apply if the plaintiff can rely on direct evidence of discrimination, rather than indirect evidence of discrimination (which is what *McDonnell Douglas* deals with.") "Instead, to survive a Rule 12(b)(6) motion to dismiss, Plaintiff must satisfy *Iqbal's* general plausibility requirement." *Thomas*, 2022 WL 2286780, at *8.

Thus, Plaintiff's Complaint survives the motion to dismiss because it contains sufficient factual allegations to state a plausible claim that Defendants interfered with his rights and a plausible causal connection between his protected conduct and the retaliation. The Complaint alleges that a week after Plaintiff was granted disability accommodations, on December 7, 2023, Defendant Bojarski emailed Plaintiff falsely accusing him of using the accommodations to "override institutional sanctions." (Complaint, ¶ 309) The letter was intended to and did in fact prohibit Plaintiff from using his accommodations. In addition to falsely accusing him of not needing the accommodations, she imposed obligations upon Plaintiff for using accommodations— approval from administration—that did not apply to other similarly situated disabled students[2]. (Complaint, ¶¶ 310-12) As alleged in the Complaint, Bojarski in discouraging Plaintiff from using his accommodations then and in the future, relayed inaccurate information to Plaintiff and inappropriately shared his private medical information. (Complaint, ¶¶ 308-320) When Plaintiff complained about the retaliatory actions prohibiting him from using his accommodations, Defendant Paschal responded suggesting he withdraw from Vanderbilt rather than address his disability accommodation concerns. (Complaint, ¶¶ 321-29) Being accused of having

---

[2] Defendant attached the letter as Exhibit 1 and asked the Court to consider it as referenced in the pleadings and integral to the claims. The letter is not integral because Plaintiff pled the facts supporting his claim and the letter must be considered in relation to the other facts pled, including email communications, improper sharing of information, and threats to withdraw rather than raising discrimination concerns. If the Court considers the letter, then the motion should be converted to a summary judgment motion and Plaintiff given the opportunity to conduct discovery. *See FRCP* 56(d).

accommodations to avoid sanctions, having conditions for using accommodations different than other disabled students, and being told to withdraw if he was unhappy about his concerns with using his accommodations, all shortly after his attempt to use the accommodations, meets his pleading burden. Temporal proximity is sufficient to show the required causal connection to meet the pleading requirement. *See A.C. ex rel. J.C.*, 711 F.3d at 699.

Besides arguing that the claim should be dismissed for not pleading the elements of a prima facie case, Defendant also argues that the claim fails because Plaintiff did not use the words that he was retaliated against "solely by reason of" or "because of" participation in protective activity. Again, as the case Defendants cited establishes, this is a burden of proof, not a pleading element. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012). Construed in the light most favorable to Plaintiff, the allegations are enough to discourage a reasonable person from using the reasonable accommodation; thus, his claim survives.

### f. Plaintiff's Defamation Claim Against Dr. Bourgoin Should Not Be Dismissed

In Count V, Plaintiff alleged a defamation claim against Defendant Bourgoin based on his publication of defamatory information to Simon Roe in writing. Defendant Bourgoin argued that the defamation claim should be dismissed because his statement was not capable of conveying a defamatory meaning. Defendant Bourgoin ignores the pleading and Rule 12(b)(6) standards and instead bases his argument on what "the moving party must prove." Plaintiff does not have to prove his claim in the complaint; rather, he has to sufficiently allege a plausible claim for defamation. Plaintiff did so.

Defendant Bourgoin correctly stated the elements for a defamation claim in his brief under Tennessee law. Defendant partially quoted a case from this Court, *Finley v. Kelly*, 384 F.Supp.3d 898 (M.D. Tenn. 2019), discussing the standard for deciding Rule 12(b)(6) motions to dismiss

defamation claims without actually articulating the standard. As stated in *Finley*, a defamation claim can be dismissed for failure to state a claim only if the statement is not reasonably capable of a defamatory meaning and cannot reasonably be understood in a defamatory sense. The Court considers the statement as a reasonably intelligent person would while giving the words their natural and plain meaning in the context of the statement. *Id. at 906-07; see also American Addiction Centers, Inc. v. Nat'l Assn. of Addiction*, 515 F.Supp.3d 820, 844-45 (M.D. Tenn. 2021).

Plaintiff has plausibly alleged that the statement of Defendant Bourgoin to Simon Roe—falsely stating that he instigated harassing posts and providing information that a reasonably intelligent person in the context of the letter would interpret to mean that Plaintiff had been expelled is capable of defamatory meaning and could be understood in a defamatory sense. Plaintiff alleged that Bourgoin falsely told Simon Roe and his father that Plaintiff was the instigator of the defamatory posts, when others who Defendant Bourgoin knew made similar posts were not even investigated, to insulate the school from liability if they pursued female posters for speaking of sexual assault. (Complaint, ¶¶ 53-58). Defendant Bourgoin acknowledged concern and the impropriety of sharing the outcome of the disciplinary matter with Simon Roe or his father, but ignored this concern, and shared the information in violation of policy and law, knowing that it would be used against Plaintiff in future legal proceedings. (Complaint, ¶¶ 79-82, 180-181) Moreover, calling Plaintiff the "instigator" of the postings, knowing that this was not true, to Simon Roe and his father, who were pressuring Vanderbilt to hold someone responsible and who were planning to use the information against Plaintiff was defamatory. (*Id.*, ¶¶ 203-210) The purpose of the letter was to convey falsely to Simon Roe and his father that Plaintiff was responsible for all the postings and that he was expelled, which was also untrue. (*Id.*, ¶¶ 194-198) The publication of this false information harmed Plaintiff. (*Id.*, ¶¶ 199-202)

The publication of false information about Plaintiff to Simon Roe and his father was a serious threat to Plaintiff's reputation and can reasonably be construed as holding him "up to public hatred, contempt, or ridicule" and is thus able to plausibly allege a claim *Hudik v. Fox News Network, LLC*, 512 F.Supp.3d 816, 825 (M.D. Tenn. 2021). Defendant Bourgoin, by saying Plaintiff instigated the posts rather than stating the truth about what Plaintiff posted for only a few days, as opposed to the months of prior instigating posts, and implying that Plaintiff was expelled, created a different effect on Simon Roe and others, which harmed Plaintiff. *Spicer v. Thompson*, No. M2002-03110-COA-R3-CV, 2004 WL 1531431, * (Tenn. Ct. App. Jul. 7, 2004). For these reasons, Plaintiff's defamation claim should not be dismissed

### g.  Plaintiff Properly Pled His Negligence Claim

Defendants argued that Plaintiff's negligence claim should be dismissed because it is based on the same allegations as the breach of contract claim. Earlier Defendant Vanderbilt argued that the breach of contract claim should be dismissed because Plaintiff failed to identify what provisions of the contract were breached. It is difficult to reconcile the two arguments. Plaintiff's negligence claim should not be dismissed against Defendant Vanderbilt because it is not based on the same allegations as the breach of contract claim and, in addition, the negligence claim should not be dismissed against the individual defendants because Plaintiff did not assert a breach of contract claim against them.

A claim for negligence is properly pled when the allegations plausibly assert: (1) duty of care owed to the plaintiff from the defendant; (2) a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate legal causation. *Atria v. Vanderbilt Univ.*, 142 Fed.Appx. 246, 251 (6th Cir. 2006). "Vanderbilt and its agents owe everyone, including [plaintiff], a duty to refrain from conduct that poses an unreasonable and foreseeable risk of harm. In Tennessee '[a]ll persons

have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others. Thus, it has been said that duty is the legal obligation that a defendant owes a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm.' *Id*. (citations omitted)

In addition to the breach of contract allegations, Plaintiffs asserted that Defendants acted negligently in delivering the March 6 outcome letter to Plaintiff when he was alone, despite notification from his mother that he was at risk of self-harm. (Complaint, ¶¶ 203-233)  Moreover, Plaintiff's claims fall outside the breach of contract claim because he should not have had charges brought against him under the Student Handbook because he was not an enrolled student at the time of the alleged misconduct or when disciplinary charges were brought against him. (Complaint, ¶¶ 21, 181, Ex. A, Handbook, p. 3)  Additionally, Plaintiff's negligence claim is based on Vanderbilt's monitoring of the Greek Rank cite and requiring removal of certain posts, but not those about Simon Roe  and encouraging the posting of messages about sexual misconduct until knowing Simon Roe had filed a lawsuit (Complaint, ¶ 29, 36-38, 41-46) Thus, Plaintiff's negligent claim should not be dismissed.

### *h.* **Plaintiff's Intentional Infliction of Emotional Distress Claim Is Properly Pled**

The elements to plead an intentional infliction of emotional distress claim are "'(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004). Defendants contest whether Plaintiff pled the second element of outrageous conduct. To succeed in pleading this, Plaintiff is required to allege conduct "'so outrageous in character, and utterly intolerable in a civilized community.'" *Id.* (citations omitted).

Plaintiff has plausibly alleged that the conduct was outrageous. Defendants were on notice that Plaintiff was suffering and at risk of suicide if found responsible for the alleged misconduct. Plaintiff's mother made an impassioned plea to Defendants to wait a short time to deliver the outcome so that Plaintiff would be at his parent's home where they could ensure his safety. Defendants ignored this plea and instead delivered the outcome to Plaintiff while he was away from home and in the middle of his workday. Defendants did not notify Plaintiff's mother this was happening, despite her request, and instead sent an email laughing about whether or not she had flown to be with him. The result was that Plaintiff attempted suicide and ended up hospitalized. Fortunately, he lived. Even knowing this happened, Defendants included required reading as a part of Plaintiff's punishment concerning mocking of suicidal ideology and a reading about how one should not be afraid to die when suicidal. Risking the life of a young person over a week's time when there was no explanation for why delivery of the outcome could not wait—and then laughing about it—is outrageous conduct sufficient to plausibly allege a claim for intentional infliction of emotional distress. (Complaint, (Complaint, ¶ 203-233)

### i. Plaintiff Stated a Claim for Negligent Infliction of Emotional Distress

The elements of a claim for negligent infliction of emotional distress in Tennessee are the same as a general negligence claim: (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation. *See Camper v. Minor,* 915 S.W.2d 437, 446 (Tenn. 1996). Plaintiff must also plead that the conduct was so severe it would cause a reasonable person to suffer serious or severe emotional injury. Defendants argue for dismissal because there was no independent duty aside from the contract and no outrageous conduct. For the reasons stated above, those arguments fail. Additionally, the emotional distress claims are based on the delivery of the

outcome. The duty to Plaintiff to ensure his safety based on the outreach from Plaintiff's mother extended beyond the Student Handbook.

### j. Plaintiff's Claim for Unjust Enrichment

Because Vanderbilt does not dispute the existence of a contractual relationship, Plaintiff does not dispute that his unjust enrichment claims should be dismissed.

### k. Plaintiff's Tortious Interference with Contract Claim Is Properly Pled

To assert a claim for tortious interference with contract, Plaintiff "must sufficiently plead: '(1) that there was a legal contract; (2) that the defendant knew of the existence of the contract; (3) that the defendant intended to induce a breach of the contract;(4) that the defendant acted maliciously; (5) that the contract was actually breached; (6) that the defendant's acts were the proximate cause of the breach; and (7) that the plaintiff suffered damages resulting from the breach.'" *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F.Supp.3d 734, 759 (M.D. Tenn. 2019). Vanderbilt argues for dismissal stating that he did not plead he had a contract and that he cannot assert a claim for an internship. Plaintiff did plead that he lost his internship, bonus, and had a contract for a job offer that was rescinded because of the discipline (Complaint, ¶¶ 345, 507-508, 514;) Thus, Defendant's arguments for dismissal are without merit.[3]

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss. Alternatively, should the Court rule that Plaintiff has not plausibly alleged any cause of action, he requests leave to amend to cure the deficiency.

---

[3] If the Court finds that Plaintiff did not plead a claim for tortious interference with contract, Plaintiff requests leave to amend to add details about his employment or to plead a claim for tortious interference with business relationships. *See, e.g.*, *F.S. Sperry Co., Inc. v. Schopmann*, 304 F.Supp.3d 694. 705 (E.D. Tenn. 2018).

Respectfully submitted,

s/Tracy L. Turner

**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT:  (615) 630-7717
pchastain@bkblaw.com
**JACOB E. MOSES**
Registration No. 41637
DIRECT: (615) 630-7742
(615) 256-8787, Ext. 142
jmoses@bkblaw.com
**TRACY L. TURNER** (*pro hac vice* pending)
Rosenberg & Ball Co., LPA
205 South Prospect Street
Granville, Ohio 43023
740.644.1027 (telephone)
866.498.0811 (facsimile)
tturner@rosenbergball.com

Attorneys for Plaintiff Parker Poe

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed via the Court's electronic filing system this 12th day of September, 2024, which shall subsequently serve a copy of same upon all parties of record.

*/s/ Tracy L. Turner*
**TRACY L. TURNER**