IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PARKER POE, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:24-cv-00368 |
| | ) |
| v. | ) Judge Crenshaw |
| | ) Magistrate Judge Frensley |
| DR. MELANIE LOWE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## JOINT DISCOVERY DISPUTE STATEMENT

Plaintiff Parker Poe ("Plaintiff") and Defendants Vanderbilt University, Dr. Jeremy Bourgoin, Neil Jamerson, Lisa Clapper, and Dr. Jamie Bojarski (collectively, "Defendants") file this Joint Discovery Dispute Statement pursuant to Section F of the Initial Case Management Order (Doc. 89) and Local Rule 37.01(b). The parties have reached an impasse regarding Defendants' ability to request records from Plaintiff's former employers, including the wording of an authorization of release of employment records and the scope of Defendants' request to employers.[1] The parties certify that counsel have exchanged letter correspondence and conducted multiple telephonic meet-and-confers on this issue. The parties have made a good faith effort to resolve the dispute between them but have not been able to reach an agreement.

---

[1] Plaintiff continues to utilize a pseudonym in this litigation while his Motion for Review of Nondispositive Order of Magistrate Judge (Doc. 99) remains pending. As a result, Defendants are unable to issue non-party subpoenas for documents in this matter and have focused their efforts on working with Plaintiff to obtain discoverable documents.

# DEFENDANTS' STATEMENT OF THE DISPUTE

## a. Factual and Procedural History

This case arises from Plaintiff's suspension from Vanderbilt for violation of Vanderbilt policy. Plaintiff brought this lawsuit against Defendants for their roles in the decision-making process, the ultimate accountability decision, and other matters collateral to the accountability decision. Plaintiff included eight different claims, including claims for intentional infliction of emotional distress and negligent infliction of emotional distress. (Doc. 159 at 110-117). Plaintiff claims that, because of Defendants' actions, he has suffered damage to his future employment prospects. Specifically, Plaintiff claims that, "[a]t multiple firms, Plaintiff either had their employment offer rescinded, had to turn down an offer, had to withdraw from the interview process, or was prevented from applying altogether." (*Id.* at ¶ 345). In his interrogatory responses, Plaintiff identified 16 employers that he "does not contend that he would have received an offer from," but that "he was interested in and which he could have had future opportunities with prior to the events as alleged in the Complaint." *See* Plaintiff's Supplemental Response to Interrogatory No. 6. Plaintiff also identified a smaller group of three employers that "he held a position at which then either offered him a full-time position or might have been interest in offering him a full-time position prior to the events in the Complaint." *Id.*

Defendants included their first set of discovery requests a request that Plaintiff execute an authorization for the release of his employment records. Plaintiff refused to sign the release as written and expressed concern about potential harm to his professional reputation that would result from Defendants' records requests. Defendants offered to limit their third-party discovery to the smaller group of three companies where Plaintiff worked previously and agreed to remove any reference to the case caption in the correspondence to the former employer. Defendants also sent

Plaintiff a copy of the letter that it planned to send to the former employers containing the specific categories of records sought (attached hereto as Defendants' Exhibit 1). Defendants made a concerted effort to keep the categories of documents sought sufficiently narrow (e.g., by avoiding general categories like "personnel file"), and limited the requested categories to those directly relevant to Plaintiffs' claims (e.g., Plaintiff's performance reviews, any communications regarding consideration of Plaintiff for future employment opportunities at the company, etc.). See *id.* As to Defendants' request for communications specifically, Defendants do not include a general request for all communications referencing Plaintiff in any way—Defendants' requests for communications are limited to discrete topics. *See id.*

Despite these concessions and good faith efforts to address Plaintiff's concerns, Plaintiff continues to refuse to execute authorization for the release of his employment records. In an email dated July 10, 2025 regarding Plaintiff's refusal to sign, counsel for Plaintiff concluded: "I think both parties largely agree on the appropriate scope of third-party discovery directed at these folks [former employers] (with some disagreement on the margins). But I think that the legacy trust issues on both sides are standing in the way of an agreement." In the same email, counsel for Plaintiff suggested that Defendants issue subpoenas for the records they seek, but Defendants cannot disclose Plaintiff's name to any outside party pursuant to the terms of the Pseudonym Order currently in place. (Doc. No. 1-1 at 77 ("[T]he parties, their attorneys, and agents shall refrain from publishing Plaintiff's true identity . . . all papers filed in this action, all judgments, orders and decisions, notices to the Court and other documents shall refer to Plaintiff under the pseudonym PARKER POE")). Indeed, a subpoena would contain the full case caption information and Defendants would need to disclose Plaintiff's real name to inform the employer of exactly whose records Defendants are requesting. Counsel for Defendant reiterated this issue to counsel for

Plaintiff multiple times and pointed out that, while Defendants could seek court intervention to issue a subpoena or amend the language of the protective order (both of which Defendants logically assume Plaintiff would oppose), Defendants cannot unilaterally issue a subpoena under the current wording of the protective order.

As a final effort to reach a resolution of the issue without court involvement and accommodate Plaintiff's privacy concerns, counsel for Defendants invited Plaintiff to send a redline of the proposed authorization and/or the proposed letter to employers so that Defendants could understand the specific provisions (or the "margins" as Plaintiff's counsel called it) with which Plaintiff takes issue. Plaintiff declined to do so.

b. **Argument**

Plaintiff claims that he did not receive full-time job offers and/or had full-time job offers revoked because of Defendants' actions. Plaintiff has therefore opened the door to discovery of information and documents about his work with those employers to explore the legitimacy of his representations about his future employment prospects. For example, if Plaintiff had poor performance reviews at one of the companies and that company declined to make him a full-time job offer on that basis, that information would be directly relevant to causation. Indeed, counsel for Defendants' understanding of prior conversations with counsel for Plaintiff is that Plaintiff does not disagree with the overall relevance of documents from his former employers. Nonetheless, Plaintiff refuses to execute the proposed authorization based on a general concern for the impact that the records requests would have on his future employment prospects in an allegedly small industry.

When a party seeking discovery demonstrates that the materials sought are relevant, "the party opposing production then bears the burden of establishing that the discovery sought 'is not

4

Case 3:24-cv-00368    Document 187    Filed 07/18/25    Page 4 of 15 PageID #: 2672

relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm.'" *Bright v. Brookdale Senior Living, Inc.*, No. 3:19-CV-0374, 2022 WL 18639035, at *2 (M.D. Tenn. Feb. 14, 2022) (quoting *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)). Plaintiff cannot meet that burden.

As described above, the documents sought from Plaintiff's former employers are highly relevant and far from "marginally relevant." As to the potential for undue burden on Plaintiff, he faces no burden at all. He is not being asked to provide anything beyond a signed authorization—Defendants will seek the relevant records directly from Plaintiff's former employers without any effort required from him. Defendants anticipate that Plaintiff will base his argument on the final factor: potential for harm.

The risk of reputational harm to Plaintiff is minimal and vastly outweighed by the relevance of the documents sought. At Plaintiff's request, Defendants agreed to remove any references to this lawsuit (e.g., case number, case name, court information, etc.) in the proposed correspondence to his former employers. And since Plaintiff is still proceeding under a pseudonym, even a curious former employer could not search his name to locate this lawsuit. Additionally, the former employers that are targets of these records requests are just that: *former* employers. The risk of harm to Plaintiff's future employment prospects with firms that have already declined to continue to employ him or offer him full-time employment (for whatever reason) is extremely small, if not nonexistent.

Simply put: Plaintiff cannot have his cake and eat it too. He is claiming damages for lost future employment opportunities, but when Defendants attempt to exercise their right to discover information and documents relevant to his claims, he obstructs those efforts in the name of concern for his future employment opportunities. Plaintiff chose to bring this action and seek damages for

5

lost employment opportunities, and the discovery of records from the employers with which he claims he lost opportunities is a natural consequence of that choice. While Defendants are sensitive to Plaintiff's position and have attempted to accommodate it, Plaintiff's speculative concern about future harm is vastly outweighed by the relevance of the materials sought and their importance for Defendants' to adequately prepare their defenses.

For the foregoing reasons, and because Defendants cannot issue third-party subpoenas that link Plaintiff to the lawsuit by name, Defendants request that the Court require Plaintiff to execute the authorization for release of his employment records previously provided by Defendants.

## PLAINTIFF'S STATEMENT OF THE DISPUTE

### A. Mr. Poe Objects to the Scope of Defendants Third-Party Discovery Requests

The parties dispute the proper scope of third-party discovery. Though the scope of this dispute is narrow, the way it is resolved will have profound consequences for Parker Poe. Because prosecution of this lawsuit involves disclosures of the utmost intimacy, Mr. Poe proceeds under a pseudonym. Mr. Poe has repeatedly offered to sign a tailored release covering defendants' stated discovery needs. But defendants have rejected this reasonable compromise, demanding instead a blanket release exposing irrelevant records far beyond this case's scope.

Mr. Poe is seeking to work in a small, interconnected field where excessive discovery could further torpedo his career prospects. But defendants insist on this excessive approach. And, throughout these negotiations, they have taken contradictory positions to pressure Mr. Poe into accepting their excessive demands. First, they threatened to subpoena his records to force him to accept their excessive release. Now they claim they cannot issue subpoenas at all—even though Mr. Poe has consented to the use of his name for that purpose. This about-face seems designed to threaten Mr. Poe with losing his anonymity for raising reasonable concerns about discovery limits.

6

Case 3:24-cv-00368    Document 187    Filed 07/18/25    Page 6 of 15 PageID #: 2674

The parties' positions are straightforward: Mr. Poe proposes balancing legitimate discovery needs against appropriate privacy protections. Defendants demand broad access to Mr. Poe's employment history, whether relevant or not. Worse, they seek to do so in a manner designed to reach as many employees at these companies as possible—by seeking all the employees' text messages and instant messages, for example. The Court should reject defendants' overreach.

## B. Mr. Poe's Relationships with the Relevant Employers

Mr. Poe acknowledges that some reasonable third-party discovery is necessary. His Second Amended Complaint ("SAC") includes a claim for tortious interference with business relationships and requests damages related to his career prospects. The scope of the third-party discovery request focuses on Mr. Poe's relationship with three specific companies:

***Company-1.*** Mr. Poe served as an intern at Company-1 during Vanderbilt's disciplinary proceedings. Vanderbilt's actions repeatedly disrupted his work through Dr. Jeremy Bourgoin's protracted disciplinary meetings and delivery of adverse decisions—all which Bourgoin insisted occur during business hours. One disruption precipitated a suicide attempt. Bourgoin anticipated this outcome, writing to a colleague: "We're worried he's going to kill himself . . . . It's a mess but for the greater good." But the "mess" Bourgoin created "for the greater good" occurred during business hours in a competitive environment where professional presentation matters. Mr. Poe alleges that these disruptions undermined his focus and prevented him from demonstrating his capabilities to Company-1, precluding any possibility of future employment.

***Company-2.*** Mr. Poe completed a six-week internship at Company-2 several months after his suicide attempt. During this period, Mr. Poe discovered Bourgoin had provided a defamatory letter to another Vanderbilt student, Simon Roe, in violation of the Family Educational Rights and Privacy Act ("FERPA"), who then shared it publicly. (The Court previously denied defendants'

7

Case 3:24-cv-00368    Document 187    Filed 07/18/25    Page 7 of 15 PageID #: 2675

motion to dismiss the defamation claims arising from this incident.) Mr. Poe's discovery of this letter caused humiliation and paranoia, impairing his performance and preventing him from presenting his full capabilities at work. Thus, despite winning a company-wide competition, he did not receive a return offer from the firm at the conclusion of his summer internship.

***Company-3.*** This firm extended Mr. Poe a full-time position offer, which was subsequently rescinded when he failed to complete his degree by May 2024. As alleged in the SAC, Mr. Poe's inability to complete his degree flows directly from Vanderbilt's breach of contract, Title IX violations, and a pattern of retaliation—an ongoing pattern that has recently accelerated.

C. **The Parties Efforts to Resolve the Issue**

On May 6, 2025, defendants first discussed third-party releases with Mr. Poe's current counsel during a meet-and-confer call. Mr. Poe requested a model release for review, which defendants provided. *See* Ex. 2. Several weeks later, on May 22, 2025, the parties held a meet-and-confer call to discuss the scope of the releases. During this call, the defendants outlined their areas of focus for third-party discovery.

On June 13, 2025, based on information provided during the meet-and-confer call, Mr. Poe provided the defendants with a proposed employment release. The release was modeled after the generic form provided by the defendants, but targeted information that the defendants had previously identified as areas of focus. Mr. Poe's release sought to balance defendants' legitimate discovery interests with appropriate scope limitations under Federal Rule of Civil Procedure 26.

Defendants rejected this tailored approach, demanding instead that Mr. Poe sign their broad release, which would be accompanied by unspecified document requests submitted on an ongoing basis to his employers. The process Vanderbilt sought would require Mr. Poe to execute a broad

release without knowing what specific discovery the defendants actually sought—a process that could expose Mr. Poe to discovery far exceeding this litigation's scope.

Four days later, Mr. Poe attempted to resolve the issue, explaining that his release captured what the defendants had communicated they were focused on during the meet-and-confer call and that most language removed from the generic release was irrelevant boilerplate.

On June 25, 2025, Mr. Poe made a second attempt, noting concerns about the "the delta between the scope of the release and the more limited subset of what you plan to actually seek from the employers." Mr. Poe requested copies of the underlying document requests to clarify the defendants' intentions. The defendants refused to provide them at that time.

During this June 25 exchange, defense counsel threatened subpoena action, stating: "We have been trying to avoid issuing a subpoena as a courtesy to your client since he is concerned about alleged reputational damage, but if we need to go that route we can."

Two days later, with that threat hanging over his head, Mr. Poe sought to clarify whether the underlying document requests would reference the case. He learned for the first time that the release could include a cover letter referencing the case caption, eliminating any perceived privacy protections. That same day, Mr. Poe reiterated his offer to execute a reasonably scoped release but again requested copies of the defendants' specific document requests so that he could ensure the requests were appropriately tailored to the issues in this case. If the defendants continued to refuse, however, Mr. Poe indicated that he would be seeking protective relief under Rule 26(c).

On July 2, 2025, defendants finally provided their underlying document requests in the form of an employer letter. The letter confirmed Mr. Poe's concerns. Although the defendants removed the case caption, it explicitly referenced the case. It stated: "Our firm represents Vanderbilt University and certain employees of Vanderbilt University in a lawsuit involving [Mr.

Poe's real name]." In addition to revealing the existence of the lawsuit between Mr. Poe and Vanderbilt, the letter contained numerous overbroad requests, including demands for complete personnel files and "all documents and communications" relating to broad employment categories—requests that exceed established precedent for reasonable employment discovery.

Six days later, Mr. Poe's counsel identified examples of specific overbroad requests and asked the defendants to narrow them to match the reasonable scope proposed in June. The defendants later agreed to remove the request for Mr. Poe's entire personnel file but otherwise maintained their position that Mr. Poe must execute some version of the overbroad release.

On July 10, 2025, Mr. Poe told the defendants: "I think you need to go ahead and issue subpoenas to the employers. We know these are time sensitive, and I don't think there is time for the conversation about releases to continue without putting the rest of the schedule at issue."

The next day, the defendants claimed that they could not issue subpoenas. Mr. Poe responded, stating that the defendants "have never taken that position in the two months that we have been discussing this. Indeed, you have expressly stated the opposite," highlighting the June 25 email threatening to "go that route if we need to." Defendants ignored this contradiction but have continued to claim they cannot issue subpoenas—despite counsel's written confirmation that Mr. Poe consents to use of his real name for this purpose.

**D. The Process Proposed by Defendants is Unworkable Given the Privacy Concerns at Issue and the Breadth of the Requested Release.**

Defendants demand that Mr. Poe sign a sweeping release without being able to know what information they will eventually seek using it. This approach violates basic discovery principles and threatens to expose irrelevant private information far beyond this case's scope.

*The Release Seeks Irrelevant Information in Violation of Rule 26.* The proposed release covers "any and all material or information pertaining to the employment of [Mr. Poe]"—sweeping

10

Case 3:24-cv-00368   Document 187   Filed 07/18/25   Page 10 of 15 PageID #: 2678

language that violates Rule 26(b)(1)'s relevance and proportionality requirements. If contained in a subpoena, this would constitute the type of impermissible fishing expedition that courts routinely reject. *See, e.g.*, *Valentine v. Remke Markets Inc.*, 2012 WL 893880, at *4 (S.D. Ohio Mar. 15, 2012) (citing cases); *Queen v. City of Bowling Green*, 2017 WL 4355689, at *5 (W.D. Ky. Sept. 29, 2017) (request for "'the complete personnel file' is too broad because '[p]ersonnel files may contain material that is both private and irrelevant to the claims and defenses in this action.'").

The release also includes a laundry list of irrelevant categories:

> all applications of employment, resumes, . . . statement and reports of fellow employees, . . . workers' compensation files, all hospital physician, clinic, nurse, psychiatric and dental records; x-rays, test results, disability claims, or work-related accidents including correspondence, accident reports, injury reports and incident reports; insurance claim forms, questionnaires and records of payments made; pension records, disability benefit records, and all records regarding participation in company sponsored health, dental, life and disability insurance plans; and any other records concerning employment with the above named institution.

Dental records, and x-rays bear no relationship to whether Vanderbilt tortiously interfered with Mr. Poe's business relationships. The catch-all provision for "any other records concerning employment" eliminates any meaningful limitation on the information defendants seek. Even facially relevant categories are unnecessary in this case. Employment applications are irrelevant because Mr. Poe received positions at all three companies. Other requests are duplicative of information that Mr. Poe has already produced, including employment contracts with start and end dates, salary and benefits, job description, and job title. Likewise, Mr. Poe has already produced his resume, W-2s for each internship, and full copies of tax returns that match the W-2s. *Cf. Sartin v. Exxon Mobil Corp.*, 2023 WL 4836662, at *9 (M.D. La. July 27, 2023) (quashing subpoena where Plaintiff had already produced responsive documents).

***The Release's Structure Creates Additional Problems.*** The proposed release also contains two fundamental structural flaws. First, it allows defendants to obtain employee "statements"

11

while simultaneously including a broad release of liability—a bizarre request, which exceeds the bounds of normal document discovery. Second, the release's eighteen-month duration creates virtually unlimited future exposure. The authorization "is to be given full force and effect to release any and all of the foregoing information learned or determined after the date hereof" and "will expire on or before December 31, 2026." This continuing authorization gives Mr. Poe no certainty about future discovery demands. Defendants could return to the employers repeatedly, seeking additional information outside reasonable discovery bounds. This temporal scope is also completely divorced from the needs of this case given the nature of Mr. Poe's relationships with the companies—two where he interned and one where he received a full-time job offer that was ultimately pulled due to circumstances caused by the defendants' breach of contract.

***Plaintiff's Release Provides a Reasonable Alternative.*** Mr. Poe's proposed release addresses defendants' stated discovery interests while providing appropriate protections. It keeps information defendants specifically identified during meet-and-confer calls, removes irrelevant boilerplate requests, and addresses the structural problems outlined above. Defendants' rejection of this reasonable compromise—combined with their contradictory positions on subpoenas—suggests they are seeking discovery leverage, not discoverable information.

***

The Court should reject defendants' overreach and limit third-party discovery to information directly relevant to Mr. Poe's claims. Defendants can obtain necessary employment information through properly tailored requests that respect both discovery rules and privacy interests—either through Mr. Poe's targeted release or appropriately scoped subpoenas.

### E. The Employer Letter that Defendants Eventually Provided is Overbroad and Undermines the Purpose of an Employer Release

When defendants finally provided their proposed employer letter on July 2, 2025, it confirmed Mr. Poe's concerns about both scope and privacy. The letter demonstrates defendants' intent to conduct a fishing expedition while simultaneously destroying any anonymity protections.

***The Letter Eliminates Privacy Protections.*** Defendants initially refused to provide the cover letter. When asked directly, they acknowledged the letter would typically identify the case by caption. Even after agreeing to remove the caption at Mr. Poe's request, however, the defendants retained explicit litigation language: "Our firm represents Vanderbilt University and certain employees of Vanderbilt University in a lawsuit involving [Mr. Poe's real name]."

This language defeats the purpose of using an employer release rather than subpoenas. The key advantage of a release is that it allows discovery without connecting Mr. Poe's real name to the litigation. Defendants could obtain the same information through a release that they could through a properly served subpoena, while preserving the privacy protections that are currently in place. Instead, defendants insist on a process that directly links Mr. Poe's real identity to ongoing litigation with Vanderbilt, eliminating any privacy benefit and exposing him to the very reputational harm the release mechanism sought to avoid.

***The Requests Exceed Reasonable Discovery Bounds.*** The letter contains multiple categories of overbroad requests that exceed reasonable discovery bounds:

- *"All documents and communications" language*. The letter repeatedly uses "all documents and communications" formulations—the hallmark of fishing expeditions that courts routinely reject. *See, e.g.*, *Drew v. Metro. Sewer Dist.*, 2019 WL 13267923, at *4 (W.D. Ky. Nov. 20, 2019) (finding that "the request for all 'correspondence' related to Plaintiff is overbroad."); *Pollard v. E.I. DuPont de Nemours & Co.*, 2004 WL 784489, at *5 (W.D.

Tenn. Feb. 24, 2004) (granting in part motion to quash for "any and all" documents and materials related to Baker Donelson's representation of the defendant); *Rowland v. Strayer Univ. Corp.*, 2015 WL 164761, at *2 (E.D. Tenn. Jan. 9, 2015) (ordering defendant not to use "expander language" like "any and all" and "including but not limited to").

- *Duplicative requests*. Defendants seek Mr. Poe's resume, statements of payroll deposits, and W-2s despite his prior production of those documents. *See Sartin*, 2023 WL 4836662, at *9. This demonstrates their failure to tailor the requests to their actual discovery needs.

- *Irrelevant requests*. Defendants seek employment applications even though Mr. Poe received internships and/or job offers at all three companies. These applications are irrelevant to any causation issues given that they already resulted in successful hiring.

**The Industry Context Amplifies the Harm.** In Mr. Poe's small, interconnected field, the reputational consequences of broad discovery requests are particularly severe. Employers in this concentrated industry frequently communicate about personnel matters. The combination of explicit litigation references and overbroad requests—including demands that the companies search for any text or instant message that any employee at these companies sent about Parker Poe—creates substantial risk of career damage that far exceeds any legitimate discovery need.

This industry context makes defendants' approach particularly problematic. Unlike large corporations with compartmentalized HR departments, these small employers will likely discuss the litigation requests with colleagues, spreading awareness of Mr. Poe's legal disputes throughout his professional network. This is exacerbated by requests for instant messages and texts requiring individual employee consultation about Mr. Poe, as well as the language in the release allowing Baker Donelson to go to the employers' premises to copy and inspect responsive materials. There may be cases where onsite inspection is necessary, but this is not one of them.

14

\*\*\*

The Court should reject defendants' proposed employer letter and require them to proceed through properly tailored subpoenas or accept Mr. Poe's narrowly crafted release. Any third-party discovery should be limited to information directly relevant to Mr. Poe's tortious interference claims and should preserve the privacy protections and avoid unnecessary embarrassment.

DATED: July 18, 2025

Respectfully submitted,

*/s Katelyn R. Dwyer*
Mark A. Baugh (#15779)
Ryan P. Loofbourrow (#33414)
Katelyn R. Dwyer (#39090)
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
(615) 726-5600
mbaugh@bakerdonelson.com
rloofbourrow@bakerdonelson.com
kdwyer@bakerdonelson.com

*Counsel for Defendants*

*/s Edward J. Canter (with permission)*
J. Alex Little (TN BPR #29858)
Edward J. Canter (NY #5345236)
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
(615) 985-8205
alex@litson.co
ted@litson.co

*Counsel for Plaintiff*