IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PARKER POE, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:24-cv-00368 |
| | ) |
| v. | ) Judge Crenshaw |
| | ) Magistrate Judge Frensley |
| DR. MELANIE LOWE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 56.01(b), Defendants Vanderbilt University ("Vanderbilt"), Neil Jamerson ("Jamerson"), Jeremy Bourgoin ("Bourgoin"), and Lisa Clapper ("Clapper") (collectively, "Defendants") submit the following Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment:

1. In April 2022, Vanderbilt student Simon Roe ("Roe") was the target of anonymous posts on a social media site called "Yik Yak." (Second Amended Complaint ("SAC") ¶ 31).

    **RESPONSE:**

2. Plaintiff admits to making posts about Roe on Yik Yak in April 2022. (SAC ¶ 31).

    **RESPONSE:**

3. Plaintiff did not have a personal relationship with Roe. (SAC ¶ 28; Pl. Dep. at 81:5-25).

    **RESPONSE:**

4. Plaintiff does not dispute the information contained in the Yik Yak subpoena response. (Pl. Dep. at 127:1-2).

**RESPONSE:**


5. Yik Yak's response to Roe's subpoena showed that Plaintiff's phone number posted about Roe 19 times over the course of a 5-day period from April 23 through April 28, 2022. (Pl. Dep. at 124:15-125:1, Deanonymized Ex. 2 to Pl. Dep., VU_00002233-VU_00002236).

**RESPONSE:**


6. A post from Plaintiff's phone number was the first in the group of Yik Yak posts that Roe's father provided to Vanderbilt. (Pl. Dep. at 137:3-14, 184:12-19).

**RESPONSE:**


7. Other posts were made after the first post from Plaintiff's phone number in the group of Yik Yak posts that Roe's father provided to Vanderbilt. (Pl. Dep. at 137:8-14).

**RESPONSE:**


8. The content of Plaintiff's posts on Yik Yak varied, but all focused on Roe and Roe's fraternity, ▮ (Deanonymized Ex. 2 to Pl. Dep., VU_00002233-VU_00002236).

**RESPONSE:**

9. Plaintiff replied to comments made on some of the posts he made on Yik Yak. (Deanonymized Ex. 2 to Pl. Dep. at VU_00002340).

**RESPONSE:**


10. The Yik Yak subpoena response revealed the phone numbers of other ten other posters who combined to account for 20 of the discrete posts/comments included in the subpoena response. (Deanonymized Ex. 2 to Pl. Dep., VU_00002233-VU_00002236).

**RESPONSE:**


11. Of the eleven individuals responsible for at least 1 of the 39 posts subject to Simon Roe's father's subpoena to Yik Yak, five were men (Plaintiff, S.A., A.G., O.R., and A.C.), three were women (L.N., M.G., and T.I.), and three were of unknown gender (phone numbers ending 5908, 2397, and 5388). (Deanonymized Ex. 2 to Pl. Dep., VU_00002332-VU_00002350).

**RESPONSE:**


12. No other individual Yik Yak poster was responsible for more than five posts included in the subpoena response, with most having one to two posts each. (Deanonymized Ex. 2 to Pl. Dep., VU_00002233-VU_00002236).

**RESPONSE:**

13. The three female posters included in the subpoena response posted less than Plaintiff, with L.N. posting three times, M.G. posting three times, and T.I. posting once. (Deanonymized Ex. 2 to Pl. Dep., VU_0000232233-VU_00002236, VU_00002342).

**RESPONSE:**

14. Plaintiff is male. (SAC ¶ 400)

**RESPONSE:**

15. Plaintiff is not in a sorority. (Pl. Dep. at 50:22-23).

**RESPONSE:**

16. On December 30, 2022, Roe's father shared the Yik Yak subpoena results and Yik Yak post screenshots with Neil Jamerson ("Jamerson"). (Roe Father Dep. at 189:8-19, Ex. 5).

**RESPONSE:**

17. Roe's father testified that he viewed the group of 39 Yik Yak posts in April 2022 as the "attack" on his son that spurred the complaint to Vanderbilt. (Roe Father Dep. at 371:23-372).

**RESPONSE:**

18. Around time Vanderbilt decided to charge Plaintiff, it decided that the other Vanderbilt student posters would be referred to Vanderbilt's Project Safe for an educational conversation. (VU Dep. at 98:10-99:12, 100:7-15; Bourgoin Dep. at 336:14-337:7; Deanonymized Ex. 2 to Pl. Dep., VU_00002332-VU_00002350).

**RESPONSE:**

19. The 2022-2023 Vanderbilt Student Handbook provides that "students on official leaves from the University (medical, personal, disciplinary, or otherwise) fall under the jurisdiction of the accountability system from the time of their arrival on campus or matriculation, whichever is sooner, until degree conferral." (VU Dep. at Ex. 2, VU_00001633).

**RESPONSE:**

20. In accordance with Vanderbilt's Student Handbook, Plaintiff was notified by email on January 9, 2023, that a report about him was received and that he should schedule a meeting with Student Accountability. (SAC ¶¶ 63-64; VU Dep at Ex. 2, VU_00001634).

**RESPONSE:**

21. Three days after email notifying him that a report about him was received, Plaintiff attended a video conference call with Bourgoin. (SAC ¶¶ 63-64, 72; Pl. Dep. at 156:18-157:8).

**RESPONSE:**

22. Three days after the notification email, Plaintiff attended a video conference call with Bourgoin where Bourgoin showed Plaintiff a copy of his "charge sheet" which explained the basis of the complaint against him and specified the three provisions of the Student Handbook that he was accused of violating: harassment, disorderly conduct, and impersonating a University official or any other person. (SAC ¶¶ 63-64, 72, 91; Pl. Dep. 156:18-158:10).

**RESPONSE:**

23. The three provisions of the Student Handbook that Plaintiff was accused of violating (along with approximately 25 others) are explicitly listed in the both the 2021-2022 and 2022-2023 Student Handbooks as "violation[s] of University policy" for which a student may be subject to corrective action. (VU Dep. at Ex. 1, POE000682-POE000684, Ex. 2, VU_00001618-VU_00001620).

**RESPONSE:**


24. Plaintiff had seven total accountability meetings with Bourgoin from January to March of 2023 (Pl. Dep. at 103:16-25, 163:12-164:5).

**RESPONSE:**


25. During his accountability meetings, Plaintiff had the opportunity to review the post materials submitted by Roe's father, review the impact statements from Roe and his family, explain his rationale for "reposting," and otherwise explain his "side of the story." (Pl. Dep. at 164:6-22).

**RESPONSE:**


26. Plaintiff did not bring any witnesses to an accountability meeting for Bourgoin to consider. (Pl. Dep. at 165:24-166:16).

**RESPONSE:**

27. Plaintiff presented his own evidence to Bourgoin in the form of a written statement with 43 separate attached documents, including a written impact statement from his parents. (Pl. Dep.at Ex. 1, VU_00002835-VU_00002836).

**RESPONSE:**


28. Bourgoin did not prevent Plaintiff from presenting any evidence. (Pl. Dep. at 168:9-19).

**RESPONSE:**


29. During the Student Accountability process, Plaintiff submitted a cross-complaint against Roe for providing false and misleading statements about Plaintiff to Vanderbilt. Bourgoin states that he considered Plaintiff's cross-complaint as a part of his evaluation of the complaint against Plaintiff and ultimately determined that there was insufficient information to charge Roe. (Bourgoin Dec. ¶¶4-5).

**RESPONSE:**


30. Plaintiff submitted a second complaint against Roe to Vanderbilt on February 26, 2024, alleging that Roe "had access to [Poe's] confidential information that he then broke [Vanderbilt] policy to share." Documentation shows that Bourgoin found that Plaintiff did not "provide sufficient evidence . . . to warrant charging [Simon Roe] at th[at] time." (Pl. Dep. at Ex. 1, VU_00002839-VU_00002840).

**RESPONSE:**

31. During her February 23, 2023 call with Plaintiff's mother, Clapper asked her questions to assess Plaintiff's suicide risk factors, including whether Plaintiff had access to a gun or drugs. (Pl. Mother Dep. at 102:5-103:7; Clapper Dep. at Ex. 11). Plaintiff's mother denied that Plaintiff had access to either. (Pl. Mother Dep. at 102:5-103:7).

**RESPONSE:**


32. During her call with Clapper, Plaintiff's mother expressed that she did not want anybody from Vanderbilt to reach out to Plaintiff and felt that she would continue to communicate with Plaintiff. (Pl. Mother Dep. at 105:6-106:2).

**RESPONSE:**


33. There was no certainty that Plaintiff's mother's proposed alternative plan (delaying the outcome meeting) would have eliminated the risk to Plaintiff. (Pl. Mother Dep. at 130:9-12).

**RESPONSE:**


34. In response to Plaintiff's mother's concerns, Clapper and Jamerson discussed Plaintiff's risk for suicide and the need to have a care plan in place for the delivery of Plaintiff's Student Accountability outcome. (Clapper Dep. at 127:15-129:16).

**RESPONSE:**

35. Jamerson was trained on the National Association for Behavior Intervention and Threat Assessment's "risk rubric" and the assessment of risk related to threats of harm to self or others. (Jamerson Dep. at 42:21-45:4; Clapper Dep. at 128:11-14).

**RESPONSE:**

36. Jamerson evaluated Plaintiff at "a moderate-to-elevated risk of suicide because the no intent, no plans, no means, no timeline, and the student was able to safety-plan with his mom, according to his mother." (Jamerson Dep. at 395:5-14).

**RESPONSE:**

37. Vanderbilt took extra precautionary steps to mitigate any potential risk to Plaintiff associated with the delivery of his outcome, including having Clapper on the outcome call, informing Plaintiff's mother of the date of the outcome call, and encouraging Plaintiff's mother to travel to ▬▬▬ to be with Plaintiff. (Jamerson Dep. at 395:16-25).

**RESPONSE:**

38. Clapper called Plaintiff's mother on March 1, 2023, to tell her that the outcome would be delivered on March 6, 2023 and documented in her notes that, though she agreed to inquire one more time whether the outcome meeting could be moved, she still encouraged Plaintiff's mother to plan to be in ▬▬▬ on March 6. (Pl. Mother Dep. at 111:8-23, Ex. 3, VU_00002828).

**RESPONSE:**

39. Clapper sent Plaintiff's mother an email at 5:03 PM on March 1, 2023, confirming that "Monday March 6 will continue to be the target date to discuss the outcome with ▮." (Pl. Mother Dep. at Ex. 2; Clapper Dep. at Ex. 2).

**RESPONSE:**


40. Plaintiff's mother wanted to go to ▮ to be with Plaintiff when the outcome was delivered. (Pl. Mother Dep. at 96:22-97:1).

**RESPONSE:**


41. The "laugh out loud" comment in Clapper's March 5, 2023 email was "in reference to all of the various elements of not having power, []Jeremy not even being in town, us trying to ensure that we could go forward with this plan and for it to be run smoothly," not that she thought it was a funny situation. (Clapper Dep. at 147:10-22).

**RESPONSE:**


42. Plaintiff did not see the March 5, 2023 email thread between Clapper and Bourgoin until early 2024. (Pl. Dep. at 179:5-14).

**RESPONSE:**


43. Before Plaintiff's mother she saw the March 5, 2023 email thread between Clapper and Bourgoin sometime in 2024, she thought Clapper "was trying to help" and "was very nice to talk to." (Pl. Mother Dep. at 141:5-14).

**RESPONSE:**

44. Plaintiff's Student Accountability outcome meeting proceeded by video call on March 6, 2023, at 4:45 PM (the conclusion of Plaintiff's workday). (SAC ¶ 215).

**RESPONSE:**

45. Plaintiff refused to disclose where he was located for the outcome meeting. (Pl. Dep. at 182:7-16).

**RESPONSE:**

46. Plaintiff purposely told his mother that the outcome call was set for March 7, 2023 (one day after the call was scheduled) because he "did not want her to come to ▮▮▮▮▮▮ (Pl. Dep. 178:14-179:4).

**RESPONSE:**

47. Defendants did not know that Plaintiff's mother was not in ▮▮▮▮▮ at the time they delivered the outcome to Plaintiff. (Bourgoin Dep. at 390:8-22).

**RESPONSE:**

48. Clapper was on the outcome call with Bourgoin to provide support to Plaintiff, but Plaintiff left the call before speaking with her. (Pl. Dep. at 180:16-18).

**RESPONSE:**

49. Plaintiff was sent a letter from Student Accountability notifying him that he was found responsible for all three charges against him. (SAC ¶ 157).

**RESPONSE:**

50. Plaintiff was permitted to file an appeal based on three separate grounds. (SAC ¶ 242).

**RESPONSE:**

51. Lowe considered Plaintiff's appeal and sent him a written "appeal denial" explaining her rationale. (SAC ¶¶ 235, 257-280; Lowe Dep. at 63:9-19, Ex. 6).

**RESPONSE:**

52. Roe's father did not share the March 9, 2023 letter with anyone aside from with his wife and his attorneys. (Roe Father Dep. at 298:15-17, 297:14-298:4).

**RESPONSE:**

53. After Vanderbilt received evidence in the form of a pleading in the state court case that L.N.'s purported assault allegation was knowingly false, Vanderbilt pursued Student Accountability charges against her. (Jamerson Dep. at 345:20-346:4).

**RESPONSE:**

54. Plaintiff applied to and received a job offer from ▮▮▮▮ ▮▮▮▮ Company while he was still suspended from Vanderbilt. (Pl. Dep. at 242:17-21).

**RESPONSE:**


55. Plaintiff's job offer from ▮▮▮▮▮▮▮▮▮▮ was revoked because he did not have a bachelor's degree. (Pl. Dep. at 244:6-17).

**RESPONSE:**


56. After filing of the Second Amended Complaint and in response to Defendants' request for mental health records through trial, Plaintiff clarified that he is "narrow[ing] his claim for emotional distress and psychological harm to focus exclusively on the March 6, 2023 suicide attempt and a related hospital visit" and that "continuing care is not part of [his] claim." (ECF No. 183 at 10; ECF No. 228 at 4; Pl. Dep. at 201:3-11).

**RESPONSE:**


DATED: February 4, 2026

Respectfully submitted,

*/s Mark A. Baugh*
Mark A. Baugh (#15779)
Ryan P. Loofbourrow (#33414)
Katelyn R. Dwyer (#39090)
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, TN 37203
(615) 726-5600
mbaugh@bakerdonelson.com
rloofbourrow@bakerdonelson.com
kdwyer@bakerdonelson.com

*Counsel for Defendants*