# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **PARKER POE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:24-cv-00368** |
| | ) | |
| **v.** | ) | **Judge Crenshaw** |
| | ) | **Magistrate Judge Frensley** |
| **DR. MELANIE LOWE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

### A. Vanderbilt Moved on the Entirety of Plaintiff's Breach of Contract Claim.

Left guessing about which breach of contract theories Plaintiff was pursing, Defendants argued that Plaintiff could not establish a claim for breach of contract under <u>any</u> possible theory. (Doc. 242 at 11). Plaintiff's theories as articulated in his response continue to be a moving target, and Plaintiff seeks to leverage his vagueness to survive summary judgment. But Plaintiff has failed to put forth evidence to support his various theories of breach, and his tactics should not be rewarded.[2] Moreover, "reply briefs *reply* to arguments made in the response brief." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (emphasis in original). By responding to the

---

[1] Plaintiff's Response violates several Local Rules. First, Plaintiff's Response exceeds the 25-page limit by approximately three lines. *See* L.R. 56.01(d); Doc. 247 at 27. Second, the footnotes in Plaintiff's Response are not size 12-point font. *See* L.R. 7.03(a). Third, Plaintiff appears to have reduced the margin size in his Response to below the 1-inch requirement. See *id.* Finally, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts violates Local Rules by making argumentative responses. *See* L.R. 56.01(e).

[2] Plaintiff's own words highlight Defendants' quandary. In the same paragraph in which Plaintiff argues that Defendants failed to address multiple breach of contract theories, he chides Defendants for "devot[ing] briefing to a theory that appears only fleetingly in the operative complaint . . . ." (Doc. 247 at 4). This is illustrative. How are Defendants to know which theories Plaintiff considers "fleeting" and which he considers legitimate?

theories articulated succinctly for the first time in the response, Defendants are not "rais[ing] issues for the first time on reply," but rather <u>replying</u> to Plaintiff's response. (Doc. 247 at 4).

Plaintiff continues to rely on facts supporting an impermissible, generalized "unfairness" argument and imposes contractual requirements where they do not exist. For example, as to the alleged failure to provide "adequate notices of the charges," Plaintiff harps on how Vanderbilt "did not name the reporting party, describe the allegations, or cite the policy provisions at issue." (Doc. 247). But the Student Handbook only requires "[w]ritten and timely notice of charges against students, including possible consequences," which Vanderbilt undisputedly provided. (VU Dep. at Ex. 2, VU_00001634). Similar flaws plague the remainder of Plaintiff's arguments.

As to the theories of his breach of contract claim that Plaintiff argues Defendants "fail[ed] to address," the undisputed factual record dooms those as well:

**"(4) recusal of conflicted Student Accountability personnel."** The Student Handbook does not define a "conflict of interest," and affords discretion to Student Accountability staff to recuse themselves if necessary. (VU Dep. at Ex. 1, POE_000700, Ex. 2, VU_001636). Plaintiff does not show how those provisions were breached; he offers only his speculation that Bourgoin "seemed to have a negative opinion of [him]" and communicated with Roe's family, and his unsupported and contradicted belief that Jamerson was involved in his cross-complaint against Roe (Poe Dep. at 154:22-155:8; Doc. 242 at 6).

**"(5) prohibition against informing a complainant the outcome."** Plaintiff cannot point to any provision of the Handbook that prohibits Vanderbilt from notifying a complainant of the outcome, and failed to put forth any evidence in support of his allegation that such circumstances are limited to "cases involving sexual misconduct." (SAC ¶ 180).

**"(6) severity of the sanction."** As the Court previously noted, "the limited guidelines in the Student Handbook confer substantial discretion to Vanderbilt" when issuing sanctions. (Doc. 97 at 15). The undisputed facts fail to show any abuse of that discretion—Bourgoin considered the information provided to him and reached a reasoned conclusion based on that information.

**"(8) Poe's ignored complaints."** Vanderbilt provided evidence showing that both of Plaintiff's cross-complaints against Roe were considered. (Bourgoin Dec. ¶¶ 4-5; Pl. Dep. at Ex. 1, VU_00002840). Plaintiff fails to rebut that evidence beyond arguing that Bourgoin's testimony "lacks contemporaneous support" and pointing to other irrelevant facts (Doc. 248 at 15).

**"(11) disparate treatment of female students who posted about [] Roe."** This theory fails for the same reasons his Title IX claim fails; he was not similarly situated to the other posters.

**"(12) disability-based retaliation."** Plaintiff's disability retaliation claim is simply an attempt to work around the Sixth Circuit's holding in *Smith* and recast his Section 504 retaliation claims as breach of contract claims. The Second Amended Complaint only refers to pages 3 and 47 of the Student Handbook (and a faculty manual that has no bearing on student conduct) as the contractual provisions allegedly violated, but those provisions simply incorporate Section 404 (Doc. 161. ¶ 374(h); Doc. 25-3; Doc. 25-3). If the Section 504 claim is dismissed, so should any mirroring breach of contract claim. [3]

**B. The Court Did Not Previously "Reject" Vanderbilt's Argument Against a Similarly Situated Finding, and Plaintiff Still Cannot Establish a Selective Enforcement Claim.**

Discovery disproved Plaintiff's initial allegations supporting a similarly situated finding at the dismissal stage. While Plaintiff may argue the existence of other posts, those other posts are

---

[3] Theories 9 and 10 (i.e., "unauthorized sharing of disability information" and "lack of jurisdiction") are subject to dismissal and should be dismissed for the same reasons articulated in Defendants' Partial Motion to Dismiss. (Doc. 166 at 11-12).

irrelevant to <u>Plaintiff's</u> Student Accountability proceeding. Plaintiff does not dispute that Vanderbilt was provided with subpoena results for a distinct subset of posts, that he made 19 of those posts, or that it was that subset of posts upon which Plaintiff's Student Accountability finding was based. (Doc. 247 at 13). Plaintiff does not dispute that, <u>in that subset of posts</u>, he posted 19 times compared to L.N.'s three.[4]

### C. Plaintiff's Speculation Does Not Create a Triable Tortious Interference Claim.

Plaintiff's Response narrows his tortious interference claim to relationships with two employers, but he still fails to create a triable issue of fact. (Doc. 247 at 15). Plaintiff's performance evaluations did not "note[] concerns . . . that the investigation was taking a toll on [Plaintiff's] performance," as Plaintiff suggests. Rather, the evaluations noted that Plaintiff "has been late to work twice . . . ." (Doc. 249, Ex. 44). To argue that Defendants' actions caused him to be late which then caused him to lose out on a job offer requires two leaps of logic and is insufficient to show damages "resulting from" the alleged wrongful interference. As to Plaintiff's other employer, he does not deny that he applied for a job for which he was not qualified. Defendants also could not have had knowledge of Plaintiff's relationship with an employer to which he did not apply until nearly a year after his suspension. Bourgoin's punishment was not punitive; and his full quote stressed the importance of a sanction "with a sizable life impact <u>proportionate to the effect of his own actions</u>." (Pl. Dep. Ex. 1 at VU_00002834). Plaintiff cannot show an <u>intent</u> to interfere.

### D. Defendants Met the Standard of Care and Cannot Be Held Liable for Things They Could Not Foresee.

Defendants did not "selectively quote" Plaintiff's expert; the standard of care was quoted verbatim: "assess the student and take steps to ensure the student is safe." (Lewis Op. at 10.).

---

[4] The content of the "twelve" posts by L.N. were not only dissimilar, but those posts were not provided to Vanderbilt until months after Plaintiff was sanctioned. L.N. also admitted responsibility—a fact that Plaintiff does not address.

Plaintiff cannot dispute that Defendants met this standard; he can only "indulge in hindsight." *Cotton*, 576 S.W.3d at 651. The undisputed facts show that Jamerson evaluated Plaintiff's risk, that there were no reasonable alternatives, and that protective measures were implemented. Plaintiff's purported alternatives are also flatly unreasonable (e.g., suggesting that Vanderbilt fly Plaintiff to campus to deliver the outcome, stopping the proceedings indefinitely, etc.). The allegation the Defendants "overrode" Clapper's opinion is also inaccurate; she testified that she was comfortable proceeding with the outcome meeting. (Clapper Dep. at 153:10-16). Clapper was unable to assess Plaintiff because his mother specifically requested that she not contact him. (Pl. Mother Dep. at 105:6-106:2). Finally, while foreseeability is generally a question for the jury, "the courts must and should resolve these issues when the undisputed facts and inferences to be drawn from the facts enable reasonable persons to draw only one conclusion." *Rains v. Bend of the River*, 124 S.W.3d 580, 596 (Tenn. Ct. App. 2003).

### E. The Facts of This Case Do Not Show Extreme and Outrageous Conduct.

Plaintiff argues that certain of Defendants' statements are important to his emotional distress claims for context and "mindset," yet ignores evidence throughout the record that Defendants were sympathetic and catered to concerns about Plaintiff's mental health. *See e.g.*, Clapper Dep. at Ex. 11. Plaintiff also cannot escape the fact that this is simply not a case involving conduct so outrageous that it is not tolerated by civilized society. The undisputed facts show that Defendants received the concerns about Plaintiff's mental health, evaluated them, implemented risk mitigation efforts, and proceeded to hold Plaintiff responsible for his own actions.

### F. Plaintiff Instigated the Yik Yak Posts About Roe and Cannot Show Actual Damages.

Again, Plaintiff's reliance on the alleged existence of other posts does not change the fact that, in the group of posts upon which Vanderbilt relied, Plaintiff <u>did</u> instigate the posts; his posts came first and the others came after. Also, Plaintiff's Response fails to address the fact that any

5

alleged "reputational harm" related to coworkers approaching Plaintiff at his internship was related to the already-dismissed statement that Plaintiff was "not an enrolled student." Finally, Plaintiff's argument that Roe's father's "mere denial does not eliminate the dispute" about whether he shared the letter is unpersuasive. The testimony is unrebutted by anything beyond Plaintiff's speculation, and "[me]re speculation . . . does not create a genuine issue of material fact." *Cantrell v. U.S. Dep't of Army Corps of Eng'rs*, 187 F.3d 634 (6th Cir. 1999).

DATED: March 4, 2026                          Respectfully submitted,

                                             */s Mark A. Baugh*
                                             Mark A.  Baugh (#15779)
                                             Ryan P. Loofbourrow (#33414)
                                             Katelyn R. Dwyer (#39090)
                                             Baker, Donelson, Bearman,
                                             Caldwell & Berkowitz, P.C.
                                             1600 West End Avenue, Suite 2000
                                             Nashville, TN 37203
                                             (615) 726-5600
                                             mbaugh@bakerdonelson.com
                                             rloofbourrow@bakerdonelson.com
                                             kdwyer@bakerdonelson.com

                                             *Counsel for Defendants*