# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| PARKER POE, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:24-cv-00368** |
| | ) | |
| v. | ) | **Judge Crenshaw** |
| | ) | **Magistrate Judge Frensley** |
| DR. MELANIE LOWE, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MOTION *IN LIMINE* # 7 TO EXCLUDE TESTIMONY, EVIDENCE, OR ARGUMENT RELATED TO JEREMY BOURGOIN'S DISSERTATION

Defendants Vanderbilt University, Neil Jamerson, Jeremy Bourgoin, and Lisa Clapper (collectively, "Defendants") respectfully move the Court for entry of an order *in limine* prohibiting Plaintiff Parker Poe ("Plaintiff") from introducing testimony, evidence, or argument relating to the doctoral dissertation authored by Jeremy Bourgoin.

### I.     FACTS

Jeremy Bourgoin is the Director of Student Accountability at Vanderbilt. He is expected to testify at trial as a fact witness regarding the student accountability proceedings involving Plaintiff. During his deposition, Plaintiff's counsel spent an extended period of time questioning Bourgoin about his doctoral dissertation, which examined the experiences of nonclinical student affairs staff in supporting students of concern. (Doc. No. 246-12, Bourgoin Dep., at 15:20-55:23; Doc. No. 246-13, Bourgoin Dep., at 364:12-369:14). Defendants anticipate that Plaintiff will seek to introduce testimony, evidence, or argument related to Bourgoin's dissertation in an effort to confuse the jury and mislead them into believing Bourgoin acted in accordance with his previous research.

1

Bourgoin's dissertation was a 200-page academic work studying how nonclinical student affairs staff experience the burden of supporting students in crisis. (Doc. No. 246-12, Bourgoin Dep., at 16:19-17:11, 18:3-7; Exhibit 3 to Bourgoin Dep., attached hereto as **Exhibit 1**). Bourgoin gathered information for his dissertation from workshops, questionnaires, and interviews of participants. (*Id.* at 41:9-22). The dissertation identified themes of burnout, desensitization, and emotional numbness among study participants, who were student organization advisors and other nonclinical staff—not student accountability officers adjudicating disciplinary proceedings. (*Id.* at 38:1-24, 40:10-41:22). Indeed, the study and these findings dealt with individuals who interacted with and dealt with specific students regularly and maintained "close, personal" relationships. (*Id.* at 53:23-54:19).

During the deposition, Plaintiff's counsel directed Bourgoin to read excerpts from the dissertation into the record describing how staff can "take[] on too much trauma" and develop "irrational cold responses to very real urgent matters, because they have become desensitized." (Doc. No. 246-12, Bourgoin Dep., at 40:3-9, 43:11-21). Plaintiff's counsel then asked Bourgoin whether the burnout described in the dissertation is "what happened here," i.e., whether he and his colleagues "were numb to the effects that could have happened to a student, because you were sick and tired of dealing with the [family]." (Doc. No. 246-13, Bourgoin Dep., at 364:17-365:1).

Bourgoin denied that numbness played a role and clarified that he was not involved in determining the care piece involving Plaintiff. (*Id.* at 364:21-23). Mr. Bourgoin repeatedly characterized Plaintiff's counsel's questions as an "oversimplification" and "mischaracterization" of a 200-page work focused on partnership and collaboration. (Doc. No. 246-12, Bourgoin Dep., at 53:4-9; Doc. No. 246-13, Bourgoin Dep., at 368:13-369:14). In fact, Bourgoin clarified that he was not Plaintiff's specific advisor that would be responsible for checking in on him but that he

did ensure that Plaintiff had a student care coordinator and others check in on him. (Doc. No. 246-13, Bourgoin Dep., at 368:13-369:14).

Plaintiff's counsel also directed Mr. Bourgoin to a sentence on page 126 of the dissertation stating that "expecting staff's knowledge to stop after referral given the roles that they play is negligent," and asked whether his conduct was "negligent." (Doc. No. 246-12, Bourgoin Dep., at 52:16-53:9; Doc. No. 246-13, Bourgoin Dep., at 368:5-369:14). This line of questioning was designed to extract an admission of negligence by using the witness's own academic writing against him based on a study of other individuals' experiences and that addressed an entirely different context than the disciplinary proceedings at issue.

## II. ARGUMENT

### A. The Dissertation Testimony Should Be Excluded as Irrelevant Under FRE 401-402

Relevant evidence is admissible and irrelevant evidence is inadmissible. Fed. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. The dissertation testimony fails this threshold test for multiple reasons.

First, the dissertation studied the experiences of nonclinical student affairs staff, specifically student organization advisors who have ongoing personal relationships with students. (Doc. No. 246-12, Bourgoin Dep., at 37:15-38:4). Bourgoin himself testified that "a student conduct case is different" and that his dissertation was "about a lot of the student org advisors, that kind of role, like student organization advisors, like registered student organizations on campus." (Doc. No. 246-13, Bourgoin Dep., at 366:12-18). Bourgoin specifically clarified that he was not Plaintiff's specific advisor like those interviewed and used in the study of his dissertation. (Doc.

3

No. 246-13, Bourgoin Dep., at 368:13-369:14). Thus, through Bourgoin's own testimony, the dissertation's findings do not apply to the student accountability context at issue here.

Second, the dissertation addressed burnout as a *national* phenomenon in higher education, not as evidence of how any particular staff member treated any particular student (Doc. No. 246-12, Bourgoin Dep., at 44:11-18). A generalized academic observation about a national trend in higher education has no tendency to make any fact of consequence in this case more or less probable. The dissertation does not address Plaintiff, does not address the disciplinary proceedings at issue, and does not purport to describe Bourgoin's own state of mind at any relevant time.

Third, Bourgoin explicitly denied that the burnout described in his dissertation had any application to his handling of Plaintiff's case. (Doc. No. 246-13, Bourgoin Dep., at 364:17-365:1). Moreover, he distinguished the dissertation's focus on ongoing advising relationships from the one-time adjudicatory function he performed in the case at issue. (*Id.* at 365:20-366:18). As evidenced by the lack of connection between the dissertation and the events at issue, any testimony or evidence related to Bourgoin's dissertation has no probative value.

### B. The Dissertation Testimony Should Be Excluded Under FRE 403 Because Its Probative Value Is Substantially Outweighed by the Danger of Unfair Prejudice

Even if this Court concludes that the dissertation testimony has some marginal relevance, it should still be excluded under Federal Rule of Evidence 403 because the danger of unfair prejudice substantially outweighs its probative value. Courts may "exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. 'Unfair prejudice' within [the context of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting *Fed. R. Evid. 403* advisory committee's note).

Here, the only purpose of the dissertation testimony is to invite the jury to engage in a speculative chain of inferences: (1) burnout exists among student affairs staff nationally; (2) Bourgoin studied this phenomenon; (3) Bourgoin and his colleagues must have been "burned out" when handling Plaintiff's case; and (4) therefore, the burnout caused them to treat Plaintiff improperly. When, in fact, Bourgoin specifically denied the dissertation was relevant or any numbness or burnout impacted his actions. (Doc. No. 246-13, Bourgoin Dep., at 364:17-365:1). This is precisely the type of reasoning (i.e. "suggest[ing] decision on an improper basis") that Rule 403 is designed to prevent. *Old Chief*, 519 U.S. at 180.

The risk of confusion is heightened by the nature of the dissertation itself. It is a 200-page academic work filled with academic citations, participant quotes, and institutional analysis. Presenting excerpts out of context, as Plaintiff's counsel did at deposition, creates the misleading impression that Bourgoin admitted his own conduct was negligent, when in fact he repeatedly stated that Plaintiff's characterization was a "mischaracterization of what are 200 pages of speaking to the role of partnership and the importance of reporting and relying on the care team and partnering with experts." (Doc. No. 246-13, Bourgoin Dep., at 368:13-369:14). Allowing Plaintiff to selectively excerpt and weaponize an academic work in this manner would confuse the issues and mislead the jury.

### C. The Dissertation Testimony Should Be Excluded Under FRE 404 as Improper Character Evidence

The dissertation testimony is also inadmissible under Federal Rule of Evidence 404. Rule 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance

with the character." The purpose of Rule 404 is to prohibit the use of evidence "the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too." *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 705 F.Supp.2d 1265, 1268 (D.N.M. 2010).

Plaintiff's intended use of the dissertation testimony is a textbook application of the forbidden propensity inference: because Bourgoin studied burnout and desensitization, and because he wrote that stopping after referral *could* be "negligent," the jury should infer that he *was* burned out, desensitized, and negligent in his handling of Plaintiff's case. This is precisely the chain of reasoning Rule 404 forbids. The dissertation is not evidence of any "act" or "belief" by Bourgoin toward Plaintiff. It is an academic study of a national phenomenon among a different category of university staff. Using it to suggest that Bourgoin acted in conformity with the burnout patterns he studied is impermissible character evidence. *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Federal Rule of Evidence 404(b) ... generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case.").

Bourgoin's dissertation dealt with the studies of other professionals and their opinions— not Bourgoin's personal experiences. (Doc. No. 246-12, Bourgoin Dep., at 38:1-24, 40:10-41:22, 53:23-54:19). The only purpose of the dissertation testimony, therefore, is to invite the jury to disbelieve Bourgoin's denial based on the impermissible inference that because he studied burnout and authored a dissertation on the subject, he must have been experiencing it. This is quintessential character evidence offered to show action in conformity therewith, and it should be excluded.

6

## III.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court enter an order *in limine* prohibiting Plaintiff from introducing testimony, evidence, or argument relating to the doctoral dissertation authored by Jeremy Bourgoin.

DATED: May 11, 2026                                    Respectfully submitted,

                                    */s Mark A. Baugh*
                                    Mark A.  Baugh (#15779)
                                    Ryan P. Loofbourrow (#33414)
                                    Katelyn R. Dwyer (#39090)
                                    Baker, Donelson, Bearman,
                                    Caldwell & Berkowitz, P.C.
                                    1600 West End Avenue, Suite 2000
                                    Nashville, TN 37203
                                    (615) 726-5600
                                    mbaugh@bakerdonelson.com
                                    rloofbourrow@bakerdonelson.com
                                    kdwyer@bakerdonelson.com

                                    *Counsel for Defendants*